[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No.  16-16685
_____

D.C. Docket No. 1:16-cv-00062-CG-M


KARUN N. JACKSON,
URSULA D. JACKSON,

Plaintiffs – Appellants,

versus

BANK OF AMERICA, N.A.,

Defendant,

SPECIALIZED LOAN SERVICING LLC,
BANK OF NEW YORK MELLON,
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,

Defendants – Appellees.
_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(August 3, 2018)

Before TJOFLAT and JULIE CARNES, Circuit Judges, and BLOOM,[*] District Judge.

TJOFLAT, Circuit Judge:

This appeal involves an abuse of process engineered to delay or prevent execution of a foreclosure judgment on a residence and the consequent eviction of its occupants.  The homeowners' counsel effectuated this scheme by filing a multi-count, incomprehensible complaint that flouted the Federal Rules of Civil Procedure and this Circuit's well-established precedent.  The District Court gave counsel an opportunity to file an amended complaint that comported with the requirements of the Federal Rules of Civil Procedure.[1]  Counsel amended the complaint.  He made no effort to correct its deficiencies, however, choosing to stand on his deficient pleading.  The District Court nonetheless accepted the amended complaint, going to great lengths to sort it out.

After spending fifty-four pages unpacking the pleading just to determine whether the amended complaint presented a cognizable basis for relief, the District Court dismissed the case with prejudice for failure to state a claim.  We affirm the

---

[*] Honorable Beth Bloom, United States District Judge for the Southern District of Florida, sitting by designation.

[1] Federal Rule of Civil Procedure 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  As interpreted by the Supreme Court, this requirement means a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

District Court's judgment, but we do so on an alternative ground.  By attempting to prosecute an incomprehensible pleading to judgment, the plaintiffs obstructed the due administration of justice in the District Court.  And they are doing the same here in urging this Court to uphold the sufficiency of their amended complaint.

I.

A.

The facts of this case demonstrate the scheme's operation.  Karun and Ursula Jackson, represented by Kenneth Lay, a Birmingham, Alabama lawyer,[2] brought this action against Bank of America, N.A., Specialized Loan Servicing LLC ("SLS"), Bank of New York Mellon ("Mellon"), and Mortgage Electronic Registration Systems, Inc. ("MERS") in the Circuit Court of Baldwin County, Alabama on January 12, 2016, one day after the foreclosure sale of their residence.  The Jacksons' complaint alleged fourteen causes of action under Alabama and federal law in separate counts, spanned twenty pages, and contained 109 paragraphs of allegations.  The causes of action were not defendant-specific, all were based on all of the complaint's twenty-four introductory paragraphs, and all fourteen causes of action incorporated all previous allegations.  This made it impossible for any Defendant to reasonably frame an answer.  The crux of the

---

[2] Mr. Lay is a partner in Hood & Lay, LLC.

3

complaint appears to be that Defendants[3] classified their home mortgage as in default, accelerated their loan, turned over their account for foreclosure, and reported the foreclosure to the credit reporting agencies without any legitimate basis for doing so.

Specifically, the Jacksons alleged that they purchased a house in Daphne, Alabama on August 28, 2006.  To finance the purchase, they executed a mortgage and a promissory note with First Residential Mortgage Network, Inc. for $139,040.00.  As specified in the mortgage agreement, MERS acted as the servicer for the loan.  First Residential later sold and assigned the note and mortgage to Mellon.

The Jacksons further alleged that from the date they bought the house until September 2012, Defendants accepted and cashed their monthly mortgage payments, but did not apply the payments to the Jacksons' account.  Then, in November 2012, Defendants rejected a check from the plaintiffs without explanation.  The Jacksons alleged that when they called to find out what happened, Defendants told them that "they were in default for failure to make payments, but could not explain why they were allegedly in default."  According to

---

[3] In their complaint, the Jacksons referred to all Defendants collectively, rather than specifying which Defendant(s) committed which alleged wrongful act(s).  Accordingly, we too refer to Defendants collectively for purposes of the recitation of facts, except when the complaint referenced a specific Defendant.

4

the Jacksons, Defendants further announced that they would no longer accept any mortgage payments and that their mortgage would be turned over for foreclosure.

The complaint avers that, in accordance with this statement, Defendants returned all of the monthly payments made from November 2012 to January 2014. Then, on June 12, 2015, Defendants accelerated the mortgage and demanded payment. On November 8, 2015, Defendants initiated foreclosure proceedings in Baldwin County, Alabama. They published notice of the default and foreclosure sale in the local newspaper in both November and December of 2015. The foreclosure sale occurred on January 11, 2016, and the property was sold to Mellon, the highest bidder at the sale. The foreclosure was reported to the national credit bureaus.

Based on these allegations, the Jacksons presented fourteen counts: (1) negligence; (2) wantonness; (3) unjust enrichment; (4) wrongful foreclosure; (5) slander of title; (6) breach of contract; (7) fraud; (8) false light; (9) defamation, libel, and slander; (10) violations of the Truth in Lending Act; (11) violations of the Real Estate Settlement Procedures Act; (12) violations of the Fair Credit Reporting Act; (13) violations of the Fair Debt Collection Practices Act; and a (14) claim for declaratory relief. According to the complaint, Defendants' conduct caused the Jacksons "to have negative credit reports" and to be "denied

homeowners insurance, held up to public ridicule or shame, humiliated, made to suffer physically and mentally, and endure anguish."

The Jacksons sought "(1) [a]n Order declaring that they are not in default of their mortgage agreement and declaring the notice of default is null and void," "(2) [a]n order declaring that Defendants have no right or authority to foreclose on the Jacksons' property," "(3) [a]n Order prohibiting Defendants from foreclosing on the Jacksons' property," and (4) compensatory and punitive damages for the various forms of financial, emotional, and defamatory harm alleged. The request for declaratory and injunctive relief, which if granted would undo the foreclosure sale and restore the Jacksons' mortgage on the home, made the suit the functional equivalent of a collateral attack on the validity of the foreclosure proceedings.

### B.

On February 12, 2016, Defendants removed the case to federal court pursuant to 28 U.S.C. § 1331. On February 19, all Defendants moved for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e), with Bank of America filing its own, separate motion and the other Defendants filing their motion jointly. Defendants identified three problems with the complaint: first, the complaint was a shotgun pleading that incorporated all of its factual allegations into each count; second, the complaint failed to identify the specific Defendant(s) to which each count pertained; and third, the complaint "omit[ted] key facts such

6

as relevant dates and the particular nature of the violations that [Defendants] allegedly committed." The motion was referred to a Magistrate Judge on February 22. The Jacksons responded that they did not oppose the motion and were willing to file an amended complaint, but moved the District Court for twenty-one days to prepare a revised pleading. The District Court granted the motion, giving the Jacksons twenty-one days to file an amended complaint.

On March 29, 2016, the day the amended complaint was due, Mr. Lay moved the District Court for an extension of the deadline to file the revised pleading. Mr. Lay stated that he had been out of the office due to illness and asked for seven more days. The Magistrate Judge, on referral, granted the motion and gave the Jacksons until April 5 to file their amended complaint. On April 10, five days after the expiration of the extended deadline, and without having filed the amended complaint, Mr. Lay requested another extension. This time, he stated that he had been out of the office due to illness and a death in his family and asked for an additional seven days. Defendants did not oppose his request. The Magistrate Judge granted the motion and extended the deadline to April 12.

The Jacksons filed their amended complaint on April 12. The amended complaint swelled to twenty-three pages and 123 paragraphs, made minor changes

7

to a number of the factual allegations, added two new counts,[4] and listed one or more Defendants in parentheses under the heading of each count—presumably to clarify which count(s) applied to which Defendant(s).  Counts (1) through (14) alleged the same injuries and requested the same forms of relief as those contained in the initial complaint.

The amended complaint was, like its predecessor, a shotgun pleading: it incorporated all of the factual allegations into each count without delineating which allegations pertained to each count.  On April 29, Bank of America answered the amended complaint, denying its purported wrongdoing and asserting as a sixth affirmative defense that the amended complaint failed to state a claim for relief.  The other Defendants moved collectively to dismiss the complaint on the same failure-to-state ground.  The District Court ordered the Jacksons to respond to the motion to dismiss by May 13.[5]  On May 13, the day the response was due, Mr. Lay moved for a seven-day extension to the deadline to file the Jacksons' response.  As the reason for the extension request, he stated that he was out of town for hearings in other counties.  The motion was unopposed.  Accordingly, the

---

[4] The amended complaint included all of the same counts contained in the original complaint and added two additional counts: (15) violations of the Telephone Consumer Protection Act and (16) violations of the Equal Credit Opportunity Act.

[5] The Court's order should have required the Jacksons to respond to Bank of America's sixth affirmative defense, which was the functional equivalent of the other Defendants' motion to dismiss.  Because it did not, the Magistrate Judge, in his Report and Recommendation, did not pass on the legal sufficiency of the claims against Bank of America.

Magistrate Judge granted the motion and gave the Jacksons until May 20 to respond.

The Jacksons responded to the motion to dismiss on May 20, 2016. On May 23, the District Court referred the motion to dismiss to the Magistrate Judge for a report and recommendation. On July 19, the Magistrate Judge issued his Report and Recommendation ("R&R"), which recommended dismissal of the amended complaint as against MERS, SLS, and Mellon for failure to state a claim. The R&R comprehensively analyzed each of the Jacksons' sixteen causes of action and determined that none made out a legally cognizable claim.[6] The Jacksons objected to the R&R on the ground that their claims were sufficient.

On September 2, just before the District Court was set to rule on the Jacksons' objections to the R&R, the Jacksons moved the Court for leave to amend their amended complaint, submitting with their motion a proposed Second

---

[6] In referring the motion to dismiss to the Magistrate Judge, the District Court determined, albeit tacitly, that the amended complaint was sufficiently comprehensible to enable the Magistrate Judge to identify with confidence the Jacksons' causes of action with respect to each named Defendant and to determine whether any of the sixteen counts stated a claim for relief. The Magistrate Judge, lacking the Article III dispositive power of a district judge, was therefore precluded from striking the amended complaint and ordering the Jacksons to file a complaint that comported, at bottom, with Rule 8(a) and the Supreme Court's *Iqbal* decision. *See supra* note 1. Instead, the Magistrate Judge had to give the amended complaint a reading most favorable to the Jacksons, i.e., effectively redraft its counts, and then decide whether any of them stated a claim for relief.

The amended complaint is incomprehensible. Were we to parse the amended complaint in search of a potentially valid claim, we would give the appearance of lawyering for one side of the controversy and, in the process, cast our impartiality in doubt.

Amended Complaint.  On September 7, Bank of America moved the Court for judgment on the pleadings.

On September 15, the District Court denied the Jacksons' motion for leave to amend, adopted the R&R, and dismissed the amended complaint with prejudice as to MERS, Mellon, and SLS.  On October 3, the Jacksons stipulated to the dismissal of their claims against Bank of America with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1).  The next day the District Court terminated the lawsuit with the entry of final judgment.

On October 16, the Jacksons appealed the Court's judgment.  From that point on, Mr. Lay's delay tactics continued.  He moved this Court to extend the deadline to file the Jacksons' opening brief six times.  On December 5, Mr. Lay sought and obtained an extension by phone.  On December 19, Mr. Lay requested a second extension.  He stated that though he had "been working diligently on the brief," he had "had unexpected medical problems recently and ha[d] only been able to work part time recently."  On January 31, 2017, Mr. Lay requested a third extension.  This time, he stated that while he was still "working diligently on the brief," he had been forced to travel out of town because his brother "was hospitalized in intensive care with a life threatening illness."  Moreover, he stated, his "work load" was "heavier than normal."  On March 2, he requested a fourth extension, again citing his brother's medical emergency and his workload

10

consisting of "multiple appeals pending in this Court, the Alabama Supreme Court, and the Alabama Court of Civil Appeals."  On March 7, he requested a fifth extension, stating that he had "just got back into town on March 7" after tending to his brother's illness.  On March 14, Mr. Lay sought a sixth extension, again citing his brother's illness as the reason for his being "significantly behind schedule." We granted each of the motions.

The final due date of the brief was set to March 16.  Then, Mr. Lay encountered technical difficulties in uploading the brief and was unable to meet that deadline.  As a result, he filed the Jacksons' opening brief on March 22, 2017, more than three months after its original due date of December 5, 2016.

Defendants filed their brief in response.[7]  Afterwards, Mr. Lay asked for four extensions of the deadline to file the Jacksons' reply brief.  On June 16, he requested an additional twenty-one days.  He stated that his medical issues, his "heavier than normal" workload, and his being "out of town and out of the office on other business" had prevented him from working on the reply brief.  On July 7, the final day of the twenty-one day extension, he asked for a second extension of ten days on account of the same reasons stated in his previous extension request. On July 17, the last day of the ten-day extension he received, Mr. Lay requested a third, seven-day extension.  He cited verbatim the same reasons as those listed in

---

[7] All Defendants were represented by one lawyer and filed one joint brief.

his prior two extension requests.  On July 24, the day of the revised deadline, Mr. Lay filed a fourth extension request, seeking eight additional days to file the Jacksons' reply brief.  He stated the same reasons a fourth time.  The Court granted these motions.  All told, Mr. Lay sought and obtained ten extension requests from this Court.  He filed the Jacksons' reply brief on July 25, 2017.

## II.

## A.

In his R&R, which the District Court adopted, the Magistrate Judge conducted a lengthy, comprehensive review of each of the Jacksons' sixteen counts and concluded that none stated a cognizable claim.  Rather than reviewing the District Court's comprehensive analysis of each of the Jacksons' causes of action, we affirm the District Court's dismissal with prejudice on slightly different grounds.  "[W]e may affirm the district court's judgment on any grounds supported in the record."  *Koziara v. City of Casselberry*, 392 F.3d 1302, 1306 n.2 (11th Cir. 2004).

The amended complaint is an incomprehensible shotgun pleading.  It employs a multitude of claims and incorporates by reference all of its factual allegations into each claim, making it nearly impossible for Defendants and the Court to determine with any certainty which factual allegations give rise to which claims for relief.  As such, the amended complaint patently violates Federal Rule

of Civil Procedure 8, which requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). At twenty-eight pages long and having incorporated all 123 paragraphs of allegations into all sixteen counts, it is neither "short" nor "plain."

This Court has filled many pages of the Federal Reporter condemning shotgun pleadings and explaining their vices:

> Shotgun pleadings, whether filed by plaintiffs or defendants, exact an intolerable toll on the trial court's docket, lead to unnecessary and unchannelled discovery, and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources. Moreover, justice is delayed for the litigants who are "standing in line," waiting for their cases to be heard. The courts of appeals and the litigants appearing before them suffer as well.

*Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997).[8] This case is illustrative. In ruling on the sufficiency of the Jacksons' sixteen claims, the Magistrate Judge was put in the position of serving as the Jacksons' lawyer in rewriting the complaint into an intelligible document a competent lawyer would

---

[8] *See also Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015) (canvassing this Court's "thirty-year salvo of criticism aimed at shotgun pleadings" and observing "there is no ceasefire in sight"); *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1125 n.2 (11th Cir. 2014) (citing twenty-one published opinions condemning shotgun pleadings); *Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 979 n.54 (11th Cir. 2008) ("[S]ince 1985 we have explicitly condemned shotgun pleadings upward of fifty times."); *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.9 (11th Cir. 2002) ("This court has addressed the topic of shotgun pleadings on numerous occasions in the past, often at great length and always with great dismay.").

have written.[9]  It took fifty-four pages and untold hours of the Magistrate Judge's

time to do so.  And, in conducting a *de novo* review of the complaint after the

Jacksons objected to the R&R, the District Court devoted a considerable amount of

its time as well.  Absent the dismissal of the amended complaint, the Defendants,

in framing their answer, would likely have responded in kind, with a multitude of

affirmative defenses bunched together applying to each of the amended

complaint's counts.  Put colloquially: garbage in, garbage out.  Hence, the final

resolution of the Jacksons' claims would have been time-consuming and even

more of an undue tax on the Court's resources.  Tolerating such behavior

constitutes toleration of obstruction of justice.[10]  This is why we have condemned

shotgun pleadings time and again, and this is why we have repeatedly held that a

District Court retains authority to dismiss a shotgun pleading on that basis alone.

---

[9] *See Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996) ("Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.").

[10] In *Byrne v. Nezhat*, 261 F.3d 1075 (11th Cir. 2001), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 128 S. Ct. 2131 (2008), we explained:

> Shotgun pleadings, if tolerated, harm the court by impeding its ability to administer justice. . . . Wasting scarce judicial and parajudicial resources impedes the due administration of justice and, in a very real sense, amounts to obstruction of justice.  Although obstruction of justice is typically discussed in the context of criminal contempt, the concept informs the rules of law—both substantive and procedural—that have been devised to protect the courts and litigants (and therefore the public) from abusive litigation tactics, like shotgun pleadings.  If use of an abusive tactic is deliberate and actually impedes the orderly litigation of the case, to-wit: obstructs justice, the perpetrator could be cited for criminal contempt.

*Id.* at 1131–32 (quotations and citations omitted) (alterations accepted).

14

*See, e.g.*, *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015) (explaining that the district court retains "inherent authority to control its docket and ensure the prompt resolution of lawsuits," including, under proper circumstances, "the power to dismiss a complaint for failure to comply with Rule 8(a)(2)").

We have explained that in a case in which a party, plaintiff or defendant, files a shotgun pleading, the district court "should strike the [pleading] and instruct counsel to replead the case—if counsel could in good faith make the representations required by Fed. R. Civ. P. 11(b)." *Byrne*, 261 F.3d at 1133 n.113 (quoting *Cramer*, 117 F.3d at 1263).[11]  This is so even when the other party does not move to strike the pleading.  *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018).  Implicit in such a repleading order is the "notion that if the plaintiff fails to comply with the court's order—by filing a repleader with the same deficiency—the court should strike his pleading or, depending on the

---

[11] Rule 11(b) states, in relevant part:

(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, *such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation . . . .*

Fed. R. Civ. P. 11(b), (b)(1) (emphasis added).

15

circumstances, dismiss his case and consider the imposition of monetary sanctions." *Byrne*, 261 F.3d at 1133.

This authority makes clear that dismissal of a complaint with prejudice is warranted under certain circumstances. Such circumstances existed in this case. In dismissing a shotgun complaint for noncompliance with Rule 8(a), a district court must give the plaintiff "one chance to remedy such deficiencies." *E.g.*, *Vibe Micro*, 878 F.3d at 1295. The Jacksons had that opportunity. Defendants moved for a more definite statement on the ground that the complaint was a shotgun pleading and it could not reasonably be expected to frame a responsive pleading. Its motion fully explained the complaint's defects. Bank of America stated, accurately, "The pleading is vague and ambiguous such that Bank of America has to guess as to the particular claims to which it individually should respond, and the facts upon which Plaintiffs rely in support." It further stated, correctly, that "the first sentence of each count adopts and re-alleges all prior paragraphs." It observed that "Count Fourteen . . . 'simply amounts to an amalgamation of all counts of the complaint.'" (Quoting *PVC Windoors, Inc. v. Babbitbay Beach Constr.*, 598 F.3d 802, 806 (11th Cir. 2010)). And, it explained, "With this type of drafting, Bank of America cannot know which factual allegations pertain to which of Plaintiffs' claims." This was as complete an explanation of the defects in their complaint as the Jacksons could have asked for.

16

The Jacksons did not oppose Defendants' motions for a more definite statement; their failure to oppose operated as an acknowledgement of these defects. Accordingly, the District Court granted the motions and ordered them to file a sufficient complaint. This was their opportunity. A chance to amend a complaint does not need to come in the form of a dismissal without prejudice or the striking of a portion of the complaint's allegations. It can also be accomplished by ordering the party to file a more definite statement. *See* Fed. R. Civ. P. 12(e) ("If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order."). What matters is function, not form: the key is whether the plaintiff had fair notice of the defects and a meaningful chance to fix them. If that chance is afforded and the plaintiff fails to remedy the defects, the district court does not abuse its discretion in dismissing the case with prejudice on shotgun pleading grounds.

Here, after being put on notice by Defendants of the specific defects in their complaint, the Jacksons filed an amended complaint afflicted with the same defects, attempting halfheartedly to cure only one of the pleading's many ailments by naming which counts pertained to each Defendant. The District Court should have dismissed the amended complaint with prejudice because, as we have

17

concluded, the amended complaint was incomprehensible.[12]  Instead, the Court

dismissed the amended complaint on the merits.

As we explained in *Vibe Micro*, in striking a complaint on shotgun pleading

grounds and affording the plaintiff with another opportunity to file a complaint that

passes muster, the District Court should point out the defects in the complaint.

*Vibe Micro*, 878 F.3d at 1295.  The District Court did not do so here because it

elected to consider the merits of each claim despite the complaint's shotgun nature

and dismiss each claim on that basis.  However, in light of the Jacksons' non-

opposition to Defendants' motions for a definite statement, which fully explained

the defects in the Jacksons' complaint, the Court would not have abused its

discretion if it had dismissed the amended complaint with prejudice without further

elaborating on its deficiencies—especially considering that the Jacksons agreed to

file an improved complaint yet did not do so.  This basis alone is sufficient grounds

for affirming the District Court's dismissal of the complaint with prejudice.[13]

---

[12] *See supra* note 6.  The Second Amended Complaint proposed by the Jacksons fared no better: it swelled to thirty-five pages and 141 paragraphs; it still contained sixteen counts; and it, too, reincorporated all of the allegations into each count.

[13] The District Court also had the authority to dismiss the complaint under Rule 41(b), which allows for dismissal for failure to obey a court order.  *See Weiland*, 792 F.3d at 1321 n.10. And given Mr. Lay's willful disregard of the Court's order to file a more definite statement and this Circuit's voluminous precedent decrying shotgun pleadings, dismissal *with prejudice* pursuant to Rule 41(b) was appropriate.  *See Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1338 (11th Cir. 2005) (observing that dismissal with prejudice is proper "when: (1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct); and (2) the district court specifically finds that lesser sanctions would not suffice." (quotations omitted)).

B.

Federal Rule of Appellate Procedure 38 states: "If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee."  We have imposed sanctions under Rule 38 when plaintiffs brought RICO claims with no underlying factual basis to support them, yet persisted in pursuing the case and appealing the district court's rulings to harass the defendants into settling the case.[14]  *See Pelletier v. Zweifel*, 921 F.2d 1465, 1523 (11th Cir.1991), *abrogated on other grounds by Bridge*, 553 U.S. at 639, 128 S. Ct. at 2131.  We have also awarded sanctions under Rule 38, in the form of reasonable attorney's fees and double costs, when a party ignored the governing law and relied on "clearly frivolous" arguments.  *See United States v. Single Family Residence & Real Prop.*, 803 F.2d 625, 632 (11th Cir. 1986); *see also Sun-Tek Indus., Inc. v. Kennedy Sky-Lites, Inc.*, 865 F.2d 1254, 1255 (Fed. Cir. 1989) (awarding, pursuant to Rule 38, attorney's fees and costs actually incurred).

Defendants' motions for a more definite statement cited our precedent decrying shotgun pleadings and made clear that filing a shotgun pleading is

---

[14] In *Pelletier*, a portion of the sanctions we imposed was pursuant to Federal Rule of Civil Procedure 11.  921 F.2d at 1465.  We imposed those sanctions in reversing the district court's refusal to do so.  *Id.*

grounds for dismissal in this Circuit.  If Mr. Lay was not aware of this precedent when he filed the Jackson's initial complaint, Defendants' motion told him all he needed to know.  Nevertheless, in responding to the District Court's order requiring a repleader, he stood fast, brazenly filing a facsimile of his initial pleading.  That the Magistrate Judge and the District Court examined the merits of Mr. Lay's new pleading does not change the fact that the appeal of the dismissal of the amended complaint was doomed from the start.

Mr. Lay does not dispute that the amended complaint is an impermissible shotgun pleading that obstructs the administration of justice.  Indeed, at oral argument before this Court, he stated, "I understand [the Court's] problem with the shotgun pleadings, and I'm not gonna argue about that."  After acknowledging that shotgun pleadings are "an issue in federal court," he stated, as an excuse for his behavior, that his use of shotgun pleadings had "never been an issue before" and that "they are not disfavored in Alabama courts."  In other words, Alabama's state courts readily accept the sort of pleadings he files.  This is no excuse here.  When he brought this lawsuit in the Baldwin County Circuit Court, Mr. Lay knew that the case would be removed to federal district court because the complaint

20

contained causes of action based on federal statutes.[15]  And he knew the District

Court would require a repleader, which would inexorably lead to additional delay.

In light of this Circuit's precedent, Mr. Lay's appeal of the dismissal of his

incomprehensible amended complaint is frivolous.  The prosecution of an

incomprehensible amended complaint with repeated requests for extensions in the

District Court and the prosecution of a frivolous appeal with repeated requests for

extensions in this Court, taken together, reveal Mr. Lay's motive in filing this

lawsuit.  His motive was, and is, to delay or prevent the completion of Mellon's

foreclosure.[16]  This constitutes an abuse of judicial process, a "deliberate use of a

legal procedure, whether criminal or civil, for a purpose for which it was not

designed."  *Dykes v. Hosemann*, 776 F.2d 942, 950 (11th Cir. 1985).  The

procedures of the federal courts were not designed for the purpose of

accommodating Mr. Lay's objective.

We accordingly affirm the judgment of the District Court.  We also instruct

Mr. Lay to show cause why we should not order him to pay the Appellees double

---

[15] Prior to filing the instant lawsuit, Mr. Lay filed numerous cases, each with a shotgun complaint like the one here, in the state courts of Alabama.  Each included all or most of the same boilerplate counts against different defendants as those alleged against Defendants in this case.  Each was removed to federal district court.  *See, e.g.*, *Hill v. Wells Fargo Bank N.A.*, No. 2:16-cv-1591 (N.D. Ala. Sept. 26, 2016); *Turner v. Bank of N.Y. Mellon*, No. 2:16-cv-1520 (N.D. Ala. Sept. 13, 2016); *Nelson v. Wells Fargo Bank, N.A.*, No. 2:16-cv-841 (N.D. Ala. May 20, 2016).

[16] Counsel's firm, Hood & Lay, LLC, states on its website, "We maintain a heavy volume of wrongful foreclosure cases and creditor abuse cases in the State of Alabama, litigating in state court, federal court and bankruptcy court."  Hood & Lay, LLC, http://www.whlfirm.com/ (last visited Apr. 11, 2018).

costs and their expenses, including the attorney's fees they incurred in defending these appeals. *See Pelletier*, 921 F.2d at 1523; *Cramer*, 117 F.3d at 1265 & n.17. He shall show such cause in the form of a letter addressed to the Clerk of this Court within twenty-one days of the issuance of this opinion.

**SO ORDERED.**

BLOOM, District Judge, specially concurring:

I concur in the Court's judgment but I write separately to provide guidance to the district courts when faced with a shotgun pleading following a grant of leave to replead and resurrection of a similarly improper pleading. Here, the amended complaint fared no better than the initial pleading, and counsel took no action to remedy the deficiencies pointed out in either the unopposed motion for a more definite statement or the motion to dismiss. At that point, if Rule 8(a) and *Iqbal/Twombly* are to have meaning, the district courts have the authority to strike the pleading, dismiss the case with prejudice, and reserve jurisdiction to award the defendant's attorney fees and costs. There is simply a point in litigation when a defendant is entitled to be relieved from the time, energy, and expense of defending itself against seemingly vexatious claims, and the district court relieved of the unnecessary burden of combing through them.

Perhaps the Plaintiff's attorney engineered a scheme, perhaps not. It would be unfortunate, indeed outrageous, if Mr. Lay's pleas for extensions, both at the district and appellate levels (due to travel, workload, repeated illness, hospitalization and death in the family) were not made in good faith and one large ruse. We may never know his true motivation. I write separately, however, to emphasize the crux of the majority's holding today: Neither Mr. Lay's numerous extensions nor the reasons behind them are the source of the Court's finding of

23

frivolity. Indeed, the Court and counsel entertained his requests for extensions of time with the record before them. Rather, it is his plainly deficient pleading, refiled and appealed, that marshalled substantial unnecessary resources and that leads to the Court's finding today.

EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| KARUN N.  JACKSON, | ) | |
| URSULA D. JACKSON, | ) | |
| | ) | |
| PLAINTIFFS, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: |
| | ) | CV-2016-0062 |
| BANK OF NEW YORK MELLON | ) | |
| BANK OF AMERICA, N.A. | ) | |
| SPECIALIZED LOAN SERVICES | ) | |
| MERS | | |
| DEFENDANTS. | | |

## AMENDED COMPLAINT

Come now, the Plaintiffs, Karun Jackson and Ursula Jackson, by and through their attorney of record and file their complaint against Bank of New York Mellon[1], Bank of America, N.A., Specialized Loan Services, and Mortgage Electronic Registration Systems in accordance with the Federal Rules of Civil Procedure, and in support of said complaint states as follows:

## PARTIES

1. The Defendants, Specialized Loan Services, Bank of America, and Bank of New York Mellon[2] in this action are foreign corporations doing business in Baldwin County Alabama, and are  "debt collectors" as that term is defined by 15 U.S.C. § 1692a(6).

---

[1] The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificate Holders of the CWABS, Inc., ASSET-BACKED CERTIFICATES, SERIES 2006-17

[2] The Bank of New York Mellon's complete and full listing as a Defendant is actually:  The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificate Holders of the CWABS, Inc., ASSET-BACKED CERTIFICATES, SERIES 2006-17.

1

2.     The Plaintiffs, Karun Jackson and Ursula Jackson, in this action are adult resident of Baldwin County, Alabama, and are "consumers" and/or persons affected by a violation of the FDCPA.

## JURISDICTION

3.  Jurisdiction is proper in this Court as the underlying action is based upon a contract executed in Baldwin County, Alabama. The action is brought regarding an attempted foreclosure instituted in Baldwin County, Alabama, and is in the nature of a complaint regarding that attempted foreclosure action. The action is brought to enforce the contractual remedies allowed in the mortgage document. The action seeks damages in contract and tort for the actions of the Defendants with respect to their servicing and attempted foreclosure on the loan in question.

## VENUE

4.     Venue is proper in this Court as the Plaintiffs are citizens of Baldwin County, all or substantially all of the wrongs complained of occurred in this county, and the property is situated in this county.

## STATEMENT OF FACTS

5.  Karun Jackson and Ursula Jackson bought the property located at 26235 Jackson Circle extension Daphne AL  36526. On August 28, 2006, the Jacksons bought their property and executed a mortgage loan and received and executed a mortgage with First Residential Mortgage Network Inc. and also signed a promissory note with First Residential Mortgage Network Inc.  The Mortgage contract provides for an escrow account for the taxes and insurance. The mortgagee is required to pay for the insurance and taxes from the escrow account.

6.  The Jacksons currently reside at 26235 Jackson Circle extension Daphne AL  36526.

7. The loan was allegedly later transferred and sold to Specialized Loan Services and Bank of New York Mellon although the Plaintiffs dispute the validity of the alleged transfer.

8. On November 8, 2015, Defendants improperly and wrongfully began foreclosure proceedings on the Jacksons property.  The mortgage governs acceleration and sets for the lenders remedies and provides that Lender shall give notice to the borrower prior to acceleration following borrower's breach of any covenant or agreement in this Security Instrument.  The Defendants or their agents[3] refused to engage in a legitimate and good faith mortgage foreclosure avoidance workout, accept the proper payments, inflated the amount due, and have threatened to foreclose on Plaintiffs without any basis to do so

9. The Jauregui Law Firm handled the attempted foreclosure sale.

10.  The Defendants began foreclosure proceedings on Plaintiffs' property on November 8, 2015 despite knowing that the Plaintiffs, the Jacksons claimed that they were not in default and that the attempted foreclosure sale was wrongful and invalid.

11. The foreclosure sale date was reported to the national credit bureaus and the Jacksons' credit was damaged as a result of the reporting of the foreclosure sale date which was invalid and wrongful.

12. The Jacksons, upon information and belief, contend that the alleged Assignments of the note and mortgage is defective, void, or otherwise unenforceable as to the security instrument in question in this case. None of the Defendants are the original lender. Federal law 1641(g)(1)(B) requires a new creditor to provide the date of transfer, which has not occurred.

13. The Jacksons contend that the attempted sale was wrongful, illegal, in violation of law and the documents governing the relationship between the Jacksons and the owners of the note and mortgage. Furthermore, the Jacksons allege that they were not behind in their

---

[3] Agency is a set of contractual, quasi-contractual and non-contractual fiduciary relationships that involve a person, called the agent, that is authorized to act on behalf of another (called the principal) to create legal relations with a third party

3

payments on the mortgage and that they were improperly defaulted and that the note was improperly accelerated.

14.    The Jacksons contend that the foreclosing entity lacked standing or authority to initiate foreclosure proceedings on his property.

15.    The Jacksons allege that the actions of the Defendants and its agents, employees and servants were wrongful and tortious.

16.    The Jacksons allege that the actions of Defendants by improperly attempting foreclosure on their property is a violation of law, wrongful and tortious and that the Defendants had no authority to foreclose on his home or property, and that its actions constitute negligence, wantonness, abuse of process and slander of title.

17.    As a direct result of the acts complained of the Jacksons have suffered great mental anguish, damage to his reputation, economic and emotional damages and claims from Defendants all damages allowable under the law.

18. In November 2012, the Jacksons sent a monthly payment to Defendants; however, Defendants refused the payment and returned it to the Jacksons without explanation.  After, the Jacksons called and inquired as to the returned payment, Defendants advised Jacksons that they were in default for failure to make payments, but could not explain why they were allegedly in default.  Moreover, Defendants advised the Jacksons that it would no longer accept payments from them and that Defendants would be turning over their account for foreclosure.  Prior to September 2012 Defendants accepted and cashed Plaintiffs monthly payments, but failed to properly apply them to his account pursuant to paragraph 2 of the mortgage contract.  From October 2012 until January 2014, Defendants returned payments to the Jacksons again also in violation of the mortgage contract.

19. Specifically, the July 2011, May 2012, August 2012, and September 2012 payments, as well as others, were cashed by Defendants but not applied at all to the Jacksons' account.

20. On November 8, 2015, Defendants improperly and wrongfully began foreclosure proceedings on the Jacksons' property.

4

21.    The Defendants purportedly began foreclosure proceedings on Plaintiff's property on November 8, 2015 despite knowing that the Plaintiff, the Jacksons, claimed that the attempted foreclosure sale was wrongful and invalid, and that they were not in default at the time of the acceleration.

22.    The foreclosure sale date which included false information related to the alleged default on the indebtedness was published in the newspaper in November 2015 and December 2015. Furthermore, said false and inaccurate information related to the Jacksons' alleged default was reported to the national credit bureaus and the Jacksons' credit and reputation were damaged as a result of the reporting of the foreclosure sale date and default which was invalid and wrongful.

23.    The Jacksons contends that the attempted sale was wrongful, illegal, in violation of law and the documents governing the relationship between the Jacksons and the owners of the note and mortgage. Furthermore, the Jacksons alleges that they were not behind in their payments on the mortgage and that they were improperly defaulted and that the note was improperly accelerated.

24.    The Jacksons alleges that the actions of Defendants by improperly attempting foreclosure on their  property is a violation of law, wrongful and tortious and that the Defendant had no authority to foreclose on their  home or property, and that its actions constitute negligence, wantonness, abuse of process and slander of title.   As a direct result of the acts complained of the Jacksons has suffered great mental anguish, damage to his reputation, economic and emotional damages and claims from Defendants all damages allowable under the law.

25.In January 2013, the Consumer Financial Protection Bureau issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).  Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z) Mortgage Servicing Final Rules, 78 F.R. 10901 (Regulation Z) (February 14, 2013) and 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on

5

January 10, 2014.  The Jacksons' mortgage loan in the instant matter is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b). The Defendants are subject to the aforesaid Regulations and do not qualify for the exception for "small servicers" as defined in 12C.F.R. § 1026.41(e)(4) or the exemption for a "qualified lender" as defined in 12 C.F.R. § 617.700.   The Jacksons are asserting a claim for relief against Defendants for breach of the specific rules under Regulation X as set forth below.   The Jacksons has a private right of action under RESPA pursuant to 12 U.S.C. §2605(f) for the claimed breaches and such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

## COUNT ONE
## NEGLIGENCE
## (BANK OF NEW YORK MELLON)
## (SPECIALIZED LOAN SERVICES)

26.   The Plaintiffs re-allege all prior paragraphs as if set out here in full.

27.   The Defendants negligently serviced the loan made the basis of this suit, negligently attempted to collect sums not owed by the Plaintiff, negligently caused his property insurance to be canceled, negligently defaulted the Plaintiff,  negligently attempted a foreclosure sale on Plaintiff's property, were negligent by failing to make sure that information disseminated to others (including the national credit bureaus and those credit grantors likely to use the information provided by those  bureaus) was not false, neither libelous nor slanderous, and rose to the level of maximum accuracy; negligent by failing to properly train their employees on the thorough investigation of disputed accounts; negligent by failing to properly train, and/or supervise their employees and agents with regard to the handling of Plaintiff's loan account and failing to remove the    adverse reporting from Plaintiff's credit once he disputed the same.

28.   As a direct result of the said negligence, the Plaintiff was injured and damaged as alleged above and has suffered mental anguish, economic injury and all other damages allowed by law.

6

29.   As a result thereof, the Defendant is liable for all natural, proximate and consequential damages due to their negligence.

## COUNT TWO
## WANTONNESS
## (BANK OF NEW YORK MELLON)
## (SPECIALIZED LOAN SERVICES)

30.   The Plaintiff re-alleges all prior paragraphs as if set out here in full.

31.   The Defendant acted with reckless indifference to the consequences, and consciously and intentionally wrongfully serviced the loan made the basis of this suit, attempted to collect sums not owed by the Plaintiff, caused his property insurance to be canceled, defaulted the Defendant, attempted to conduct a foreclosure sale on Plaintiff' property, failed to make sure that information disseminated to others (including the national credit bureaus  and those credit grantors likely to use the information provided by those bureaus) was not false, neither libelous nor slanderous, and rose to the level of maximum accuracy; failed to properly train their employees on the   thorough investigation of disputed accounts; failed to properly train, and/or supervise their employees and agents with regard to the handling of the Jacksons' loan account and failing to remove the adverse reporting from the Jacksons' credit once he disputed the same.

32.   These actions were taken with reckless indifference to the consequences, consciously and intentionally in an effort to increase profits for the Defendant.

33.   The Defendant knew that these actions were likely to result in injury to the Plaintiff including financial and emotional injuries and mental anguish.

34.   As a proximate result of the Defendant's wantonness the Plaintiff was injured and harmed and suffered financial injury and emotional damage.

7

35.   As a result thereof, Defendant is liable for all natural, proximate and consequential damages due to its wantonness as well as punitive damages upon a proper evidentiary showing.

## COUNT THREE
## UNJUST ENRICHMENT
## (BANK OF NEW YORK MELLON)
## (SPECIALIZED LOAN SERVICES)

36.   The Plaintiff adopts and re-alleges all prior paragraphs as if set out here in full.

37.   The actions of the Defendant in attempting foreclosure on the home of the Plaintiff in violation of law resulted in Defendant being unjustly enriched by the payment of fees, insurance proceeds and equity in the home.

38.   As a result of the Defendant's unjust enrichment, the Plaintiff has been injured and damaged in that the Plaintiff has been forced to pay charges that were illegal, wrong in character, wrong in amount, unauthorized, or otherwise improper under threat of foreclosure by the Defendant.

39.   The Plaintiff claim all damages allowable under law as a result of the Defendant's wrongful conduct and unjust enrichment.

## COUNT FOUR
## WRONGFUL FORECLOSURE
## (BANK OF NEW YORK MELLON)
## (SPECIALIZED LOAN SERVICES)

40.   The Plaintiff re-alleges all prior paragraphs as if set out here in full.

41.   Defendants wrongfully initiated and conducted a foreclosure proceeding against the Plaintiffs in violation of law.

8

42.   The foreclosure proceeding conducted on January 11, 2016 by the Defendants were either negligent, wanton or intentional, depending on proof adduced at Trial. The power of sale was exercised for a purpose other than to secure the debt owed by plaintiff, as the plaintiff was current on the debt at the time of the default and acceleration.

43.   As a result thereof, the Defendants are liable for all natural, proximate and consequential damages due to their actions including an award of punitive damages upon a proper evidentiary showing.

## COUNT FIVE
## SLANDER OF TITLE

## (BANK OF NEW YORK MELLON)
## (SPECIALIZED LOAN SERVICES)

44.   The Plaintiff re-alleges all paragraphs as if set out here in full.

45.   Defendant, in attempting foreclosure has caused a cloud to be placed on the title of the property of the Plaintiff.

46.   As the proximate cause of the Defendant's said slandering of the Plaintiff's title, he was caused to suffer injuries and damages and claims all damages allowable under law.

## COUNT SIX
## BREACH OF CONTRACT
## (ALL DEFENDANTS)

47.   The Plaintiff adopts and re-alleges all prior paragraphs as if set out here in full.

48.   The Plaintiff and his Lender entered into the standard Fannie Mae/Freddie Mac Uniform Instrument" mortgage agreement.

49.   The Defendants serviced the loan and breached the agreement by failing to comply with essential terms in paragraph 2 regarding the

9

application of payment and the notice requirements of paragraph 22 of the agreement.

50.     As a result of the defendant's breach of the mortgage contract, the Plaintiff was caused to suffer injuries and damages and claims all damages allowable under law.

51.     That paragraph 2 of the terms of the agreement entered into between Plaintiff and with First Residential Mortgage Network Inc. detail the application of payments.  That, as more fully described above, Defendants failed to apply regular monthly payments, supplemental monthly payments, in the proper manner according to the terms of the note and mortgage.   More specifically, Defendants never applied some payments at all to Jacksons' account even though Jacksons sent in the payment and it was deposited by Defendants.  Apparently, Defendants have misplaced or is unable to account for the funds from payments made or sent by Jacksons.  Moreover, numerous other payments made by Jacksons were returned to him by Defendants without reason or without explanation.  More specifically, for example, in November 2013, the Jacksons' payment was returned to them.

52.     That this misapplication of funds constitutes a breach of the mortgage contract and thus entitles the Jacksons to damages.

53. In addition, Defendants failed to send proper notices to the Jacksons as required by the mortgage contract. Even if the Jacksons are in default, Defendants failed to send a proper notice of default, a proper notice of intent to accelerate, and a proper notice of acceleration.   The contract terms related to notice are as follows:

> Lender shall give notice to Borrower **prior to acceleration** following Borrower's breach of any covenant or agreement in this Security Instrument . . . The notice shall specify (a) the default; (b) the action required to cure the default; (c) a date not less than 30 days from the date the notice is given to Borrower by which the default must be cured; and (d); that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform the Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of

10

Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument….

Accordingly, Defendants failed to comply with this provision of the mortgage contract and has therefore breached the contract.

54. Moreover, Paragraph 22 of the mortgage document gives the Plaintiff the right to bring an action to dispute the existence of a default and raise defenses thereto.  Accordingly, the Plaintiff exercises his right pursuant to paragraph 22 of the mortgage document and hereby challenges the existence of a default on his mortgage indebtedness.  As previously, discussed, the Plaintiff is not in default, has made payments every month as required by the mortgage and note and is not behind on his mortgage payments.

## COUNT SEVEN
## FRAUD

### (BANK OF NEW YORK MELLON)
### (SPECIALIZED LOAN SERVICES)
### (MERS)

55. The Plaintiff adopts and re-alleges all prior paragraphs as if set out here in full.

56. The Defendant misrepresented that the loan was in default. Further, the Defendant made false and misleading representations, to wit: dissemination of inaccurate information regarding the loan account as being in default and dissemination of inaccurate information regarding the credit history and credit of the Plaintiff that was known to be false. Defendants also falsified documents and records related to the Jacksons mortgage loan and attempted to fraudulent transfer, sale or assign the loan by illegal and fraudulent means.

57. Said misrepresentations were made negligently and/or willfully and/or wantonly and/or fraudulently, and/or recklessly with the intent to induce the Plaintiff to act thereon and upon which the Plaintiffs did in fact act to their detriment.

11

58.   Plaintiff justifiably relied upon said representations made by Defendant and as a result of said reliance proceeded with the execution of the loan; at the time said representations were made the same were false and known by the Defendant to be false and/or were false and made by mistake with the intent for Plaintiff to rely thereon.

59.   As a proximate cause of the aforementioned fraudulent misrepresentations made by the Defendant, Plaintiff was proximately caused to suffer injury and damage.

## COUNT EIGHT
## PLACED IN A FALSE LIGHT
### (BANK OF NEW YORK MELLON)
### (SPECIALIZED LOAN SERVICES)

60.   Plaintiff adopts the above paragraphs as if fully set forth herein.

61.   In association with the servicing of the loan account Defendants held Jacksons up in a false light and made undesirable and negative character and credit reputation remarks on or about the Jacksons by either speaking or writing undesirable and negative character and reputation remarks about Jacksons which was offensive, untrue, and inaccurate, and which alleged Jacksons was behind on his debt serviced by Defendants, has a bad debt with Defendants.

62.   Defendants knew Jacksons was not in default on the account, as it was paid to date and as such, that there existed no basis in law or fact, for the Defendants to make offensive, untrue, and inaccurate reports regarding Jacksons.  Defendants knew this at the times they were reporting such information.

63.   Defendants held Jacksons up in a false light and made undesirable and negative and credit reputation remarks on or about Jacksons in the national credit reporting media and to his homeowner insurance carrier. Defendants provided this false information to third parties.

64.   The conduct Defendants was objectionable to the Jacksons and to any reasonable person.  Defendants' action was willful, reckless, wanton

12

and/or made with malice and resulted in Jacksons being unreasonably placed in a false light.

65.   Due to Defendants' conduct, the Jacksons were caused to have negative credit reports, denied homeowners insurance, held up to public ridicule or shame, humiliated, made to suffer physically and mentally, and endure anguish.

WHEREFORE, PREMISES CONSIDERED, the Jacksons Pray for Judgment against Defendants in an amount to be determined by trier of fact.

## COUNT NINE

### DEFAMATION, LIBEL, SLANDER
### (BANK OF NEW YORK MELLON)
### (SPECIALIZED LOAN SERVICES)

66.   Plaintiff adopts the above paragraphs as if fully set forth herein.

67.   The Defendant willfully, wantonly, recklessly and/or maliciously published and communicated false and defamatory statements regarding the Plaintiff and said statements have subjected the Plaintiff to the denial of credit by third parties, resulted in homeowner's insurance cancellation and harmed the Plaintiff's credit reputation.  As previously stated, the Plaintiff was current on his mortgage account and has made payments each and every month.  Accordingly, he was not in default.  Despite the Jacksons' account being current, Defendants published in the newspaper false information regarding his account being in default and false information regarding its right to conduct a foreclosure sale on the Jacksons' property.

68.   Said false and defamatory statements have harmed the reputation of the Jacksons and/or deterred third persons from associating with the Jacksons.

69.   The Defendant communicated to credit reporting agencies and/or other third parties, false information that Jacksons defaulted on the loan and was in foreclosure, disseminated and imputed false and

13

misleading credit history and worthiness information concerning the Jacksons.

70. Defendants published such defamatory and libelous information in the Northport Gazette newspaper.

71. Said communications were false in that Plaintiff was not indebted to the Defendant in the amount reported, and Plaintiff was not delinquent as reported by the Defendant, and Plaintiff is the legal and rightful owner of the mortgage note.

72. At the time said communications were made, Defendants knew, or should have known, of the falsity of the communication or recklessly disregarded the potential inaccuracy of the information, yet knowingly, willfully, and maliciously communicated the falsity.

73. As a result of the intentional communication to third parties of false information, the Jacksons were caused to suffer injury to his reputation in the eyes of the community and the public and was subject to ridicule.

74. Said communications were oral and/or written.

75. As a proximate consequence of the Defendants' acts, the Jacksons were caused to be injured and damaged.

76. Defendants published such defamatory and libelous information. Defendants knew the Jacksons were not in default on the account, as it was paid to date and as such, that there existed no basis in law or fact, for the Defendants to make offensive, untrue, and inaccurate reports regarding the Jacksons. Defendants knew this at the times they were reporting such information. Furthermore, Defendants published in the local newspaper in Baldwin County Alabama the false information of the default on the loan in the foreclosure sale notice. This foreclosure sale notice states that the Jacksons' loan is in default and in foreclosure. Defendants knew this information was inaccurate at the time it published this notice in the local paper, and the published false information harmed the Jacksons' reputation and character. As a result, the Jacksons' suffered damages of their reputation which

14

negatively affected their credit and their business causing monetary losses.

77.     Said communications were false in that Plaintiff were not indebted to the Defendant in the amount reported, Plaintiff was not delinquent as reported by the Defendant, and Defendant is not the legal and rightful owner of the mortgage note.

78.     At the time said communications were made, Defendants knew, or should have known, of the falsity of the communication or recklessly disregarded the potential inaccuracy of the information, yet knowingly, willfully, and maliciously communicated the falsity.

79.     As a result of the intentional communication to third parties of false information, the Jacksons were caused to suffer injury to their reputation in the eyes of the community.

<u>**COUNT TEN:**</u>
<u>**VIOLATIONS OF TRUTH IN LENDING**</u>
**(SPECIALIZED LOAN SERVICES)**

80. The Jacksons re-allege  and  adopt the above paragraphs as if fully set forth herein and also asserts the following:

81.     Defendants violated the Federal Truth in Lending Act.

82.     The Jacksons institute this action for actual damages, statutory damages, attorney's fees, and the costs of this action against Defendants for multiple violations of the Truth in Lending Act, 15 U.S.C. §1601et seq. , (hereinafter TILA),and Federal Reserve Board Regulation Z, 12 C.F.R. § 226,promulgated pursuant thereto.

83.   This complaint is solely for monetary damages pursuant to15 U.S.C. § 1640. Under 15 U.S.C. § 1640(a), it is not necessary to allege or to prove actual damages to recover statutory damages.

84. Defendants, are covered by the Act as it regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is

15

payable in more than four installments, and is the person to whom the transaction which is the subject of this action is initially payable, making defendant a creditor within the meaning of TIL, 15 U.S.C. § 1602(f) and Regulation Z § 226.2(a)(17).

85. Defendants did not provide a proper copy of the notices required by the Act to the Jacksons.   The disclosure statement issued in conjunction with this consumer credit transaction violated the requirements of Truth in Lending and Regulation Z in the following and other respects:  (a). By failing to provide the required disclosures prior to consummation of the transaction in violation of 15 U.S.C. § 1638(b) and Regulation Z § 226.17(b).  (b). By failing to make required disclosures clearly and conspicuously in writing in violation of 15 U.S.C. § 1632(a) and Regulation Z § 226.17(a).  (c). By failing to include in the finance charge certain charges imposed by defendant payable by plaintiff incident to the extension of credit as required by 15 U.S.C. § 1605 and Regulation Z § 226.4, thus improperly disclosing the finance charge in violation of 15 U.S.C. § 1638(a)(3) and Regulation Z § 226.18(d). Such amounts include, but are not limited to the attorney fees and late fees, 15 U.S.C. § 1605(a), Regulation Z § 226.4(a).

86. The regulations require that the notice shall identify the transaction or occurrence and clearly and conspicuously disclose the following:  The retention or acquisition of a security interest in the consumer's principal dwelling. The consumer's right to rescind, as described in paragraph (a)(1) of this section. How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.  The effects of rescission, as described in paragraph (d) of this section.  The date the rescission period expires. (See Reg. Z §§ 226.15(b)(5) and 226.23(b).

87. By charging "attorney fees" and other "fees" not authorized by the mortgage contract, Defendants has made unauthorized charges and failed to disclose these charges in violation of the Act.  In this case, Defendants added fees to the Jacksons' account in September 2011 which are referenced in the notice of default.  Moreover, once the account was turned over to the attorney for foreclosure in October 2013, additional fees were improperly added to the account.  Each

16

time the sale was published in the newspaper up to and including December 2015, Defendants added additional and unauthorized fees to the Jacksons' account balance.

88. By calculating the annual percentage rate (APR) based upon improperly calculated and disclosed finance charges and amount financed, 15 U.S.C. § 1606, Regulation Z§ 226.22, Defendants understated the disclosed annual percentage rate in violation of 15 U.S.C. § 1638(a)(4) and Regulation Z § 226.18(c).

89. That the Defendants have been improperly amortizing the loan, and has failed to provide proper disclosures to the Jacksons. Defendants failed to send proper monthly statements to the Jacksons in violation of the Act.

90. By reason of the aforesaid violations of the Act and Regulation Z, Defendants  is liable to Jacksons in the amount of twice the finance charge, actual damages to be established at trial,  and attorney's fees and costs in accordance with 15U.S.C. § 1640 for violations of Federal Truth in Lending Act.

## COUNT ELEVEN:
## VIOLATIONS OF REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA)
## (SPECIALIZED LOAN SERVICES)

91.   The Jacksons re-allege and adopts the above paragraphs as if fully set forth herein and also asserts the following:

92.   Defendant, SLS, is a loan "servicer"[4] of the Plaintiff's "federally related mortgage loan" as those terms are defined in the RESPA, 12 U.S.C. § 2602(1) and 12 U.S.C. § 2605(i)(2).  Defendants violated the Real Estate Settlement Procedures Act (REPA) by failing to acknowledge or respond to Jacksons' Qualified Written Request (QWR).  Defendant violated the Real Estate Settlement Procedures Act (REPA) by failing to acknowledge or respond to Jacksons'

---

[4] A servicer of the loan collects payments from the borrower, sends payments to the lender and handles administrative aspects of the loan.

17

Qualified Written Request (QWR) within in the time provided by federal law.

93.   The Jacksons made a Qualified Written Request pursuant to RESPA to Defendants on October 29, 2015 and December 15, 2015 which was sent by certified mail.  It was signed for by Defendants acknowledging receipt of the QWR.  Defendants never acknowledged receipt of the QWR request and never responded to it.   Defendants' failure to acknowledge and properly respond to the QWR request is a violation of RESPA or the Dodd-Frank Act.  Because of said violations of said acts, the Jacksons were damaged because they were not informed of the information regarding their loan.  Because the Defendants failed to give this information to the Jacksons, they were not able to stop the foreclosure on their home.  Accordingly, the Jacksons are entitled to damages from the Defendants.   Plaintiffs suffered damages by Defendants' failure to comply with the RESPA law because they were unable to get a proper accounting of the fees and charges owed on the account to cure any alleged default and as a result a foreclosure sale was set.

## COUNT TWELVE
## FAIR CREDIT REPORTING ACT

## (SPECIALIZED LOAN SERVICES)

94.   The Jacksons re-allege and adopts the above paragraphs as if fully set forth herein and also asserts the following:

95.   The Jacksons disputed the account and false credit reporting. Defendants were inaccurately reporting that the Jacksons were delinquent in their mortgage loan and in Default.  The Jacksons repeatedly contacted Defendants from September 2012 until January 11, 2016 and informed Defendants regarding ITS INACCURATE REPORTING.  Moreover, the Jacksons contacted the credit national bureaus and informed them of the inaccurate information and disputed same.  Nonetheless the credit reports were never changed because Defendants kept reporting the account as delinquent and in foreclosure.

18

96.  Despite receipt of the dispute, defendants failed to properly investigate and respond, failed to make any effort to verify the complaints of plaintiff and reported the false, derogatory information to the consumer reporting agencies in violation of their duties as a furnisher of credit.

97.  According to the national consumer reporting agencies' reports the defendants falsely reported about plaintiff's disputed debt.

98.  Defendants likewise willfully, or alternatively, negligently, violated the Fair Credit Reporting Act by failing to properly conduct a reasonable investigation and by failing to supply accurate and truthful information.

99.  Rather, defendants reported false and inaccurate information and failed to retract, delete and suppress false and inaccurate information it reported about the plaintiff.

100.  Defendants failed to conduct a reasonable investigation with respect to consumer credit data it reported about the plaintiff.

101.  Defendants failed to review all relevant and pertinent information provided to it regarding the debt.

102.  As a proximate result of the Defendants' fraudulent conduct the Plaintiffs have been injured and damaged.

103.  Defendants' violations and false credit reporting about plaintiff have been a substantial factor in causing credit denials and other damages.

104.  Defendants are liable unto plaintiff for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, attorneys' fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws,

19

together with legal interest thereon from date of judicial demand until paid.

105. WHEREFORE PLAINTIFF, PRAYS that after all due proceedings be had     there  be judgment herein in favor of Plaintiff and against Defendants.  1) That there be Judgment in favor of Plaintiff and against Defendants, for all reasonable damages sustained by Plaintiff including but not limited to actual damages, statutory damages, compensatory damages, out-of-pocket expenses, credit denials, adverse action, lost credit opportunities, costs and  time of repairing his credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, and for punitive/exemplary damages, attorneys' fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid; and 2) That this Honorable Court order Defendants to reinvestigate and correct the credit report(s), data emanations, and credit histories of and concerning Plaintiff or any of plaintiff's personal identifiers.

## COUNT THIRTEEN

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. § 1692 et seq.

### (SPECIALIZED LOAN SERVICES)

106. The Jacksons re-incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

107.  Defendant servicer, Specialized Loan Services (SLS) is considered a "debt collector" under the FDCPA as when it each began servicing the loan, the loan was in default and it was serviced as a defaulted loan. SLS has attempted to collect the debt.  The debt is the loan for the Plaintiffs' house and thus qualifies as a consumer or personal debt under the FDCPA.  SLS violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), committed state law violations in attempting

20

to collect the debt and invaded Plaintiff's personal and financial privacy by its illegal efforts to collect a consumer debt from the Jacksons.

108. The acts and omissions of counter-defendant as more specifically stated in the facts constitutes numerous and multiple violations of the FDCPA including, but not limited to, §1692e(2), §1692e(8), and §1692f(1), with respect to the Jacksons. As a result of Defendants' violations of the FDCPA, the Jacksons are entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15U.S.C. § 1692k(a)(3) from Defendants.

109. Within the last 12 months, Defendants attempted to collect amounts not owed under the mortgage contract. Within the last 12months, Defendants sought unjustified amounts, which would include demanding any amounts not permitted under an applicable contract or as provided under applicable law in violation of the Act §1692f(1). Within the last 12 months, Defendants threatened legal action that was either not permitted or not actually contemplated in violation of the Act §1692 e. Within the last 12 months, Defendants communicated with third parties: revealing or discussing the nature of debts with third parties in violation of the Act §1692 c. Defendants within the last 12 months, failed to identify themselves and notify the Jacksons in every communication, that the communication was from a debt collector in violation of the Act §1692e(11). Within the last 12 months Defendants falsely stated the amount of the debt owed in violation of §1692e2a.

110. Congress found it necessary to pass the FDCPA due to rampant abusive practices by dishonorable debt collectors. 15 USC § 1692 is entitled "Congressional findings and declaration of purpose" and it states as follows: (a) There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. (b) Existing laws and procedures for redressing these injuries are inadequate to

21

protect consumers. (c) Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts. (d) Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce. (e) It is the purpose of this title to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

111. SLS as the servicer violated the FDCPA, 15 U.S.C. § 1692f, by using unfair and unconscionable means to collect the debt owed by the Morris, including the collecting and attempting to collect of interest and other charges, fees and expenses not authorized by the original Loan and/or Modification Agreement, or otherwise legally chargeable to the Jacksons as more fully set forth above. SLS violated the FDCPA, 15 U.S.C. § 1692e(2), by misrepresenting the character, amount and legal status of the Plaintiffs' debt. For example the default notices contained the incorrect amount owed on the loan and included incorrect amount of past due payments as well as incorrect amounts needed to bring the loan current. SLS violated the FDCPA, 15 U.S.C. §§ 1692e(5)and 1692f(6), by threatening to foreclose on the Jacksons' home even though it has no present right to possession of the property under the security agreement, and by threatening to take other action prohibited by law. SLS violated the FDCPA, 15 U.S.C. § 1692g(a)(1), by failing to accurately and fully state in communications to the Plaintiffs "the amount of the debt."

112. SLS by overcharging Plaintiffs' escrow account, falsely represented the amount of the debt necessary to cure the deficiency of the escrow account in violation of 15 U.S.C. § 1692e(2)(A). SLS also falsely represented the character, amount, or legal status of the debt in violation of 15 U.S.C. § 1692e(2)(A). SLS by failing to report the disputed debt as disputed to credit reporting bureaus, communicated credit information which was known or which should have been known as false in violation of 15 U.S.C. §

1692e(8). SLS by continuing to charge late fees and interest, and by holding the Jacksons' payments in a suspense account, failed to cease collection on a disputed debt in violation of 15 U.S.C. § 1692g(b).

113. As a result of SLS's unlawful debt collections practices, the Jacksons have suffered and continue to suffer financial harm including but not limited to:

    a. Increased interest expenses on their mortgage;

    b. Improperly charged late fees on their mortgage;

    c. Damage to their credit report and credit score; and

    d. Attorney's fees and costs associated with attempting to correct this dispute.

114. The acts and omissions of Defendant as more specifically stated in the Facts constitutes numerous and multiple violations of the FDCPA including, but not limited to, §1692e(2), §1692e(8), and §1692f(1), with respect to Plaintiff.

115. As a result of the violations of the FDCPA, Plaintiff is entitled to (1) statutory damages; (2) actual and compensatory damages; and, (3) reasonable attorney's fees, costs, and expenses from Defendants. As a result of SLS's violations of the FDCPA, Counter-Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A);and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from Defendant.

## COUNT FOURTEEN

## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT (SPECIALIZED LOAN SERVICES)

116. The Plaintiffs re-incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

*117.* The acts and omissions of Defendant as more specifically stated in the facts constitutes numerous and multiple violations of the TCPA including, but not limited to 47 USC § 227(b)(1) Restrictions on use of automated telephone equipment. **It shall be unlawful for any person** within the United States – (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party)**using any automatic telephone dialing system** or an artificial or prerecorded voice -(iii) **to any … cellular telephone service…**47 USC § 227(b)(1) *(B) an action to recover for actual monetary loss from such a violation, or to receive***$500 in damages for each such violation**, *whichever is greater, If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an* **amount equal to** *not more than* **3 times ($1,500) the amount available under subparagraph (B)** *of this paragraph.*

118. The Defendants used automatic telephone dialing systems to call the Plaintiffs' cell phones numerous times from June 2013 until December 2015.  The Plaintiffs have never given the Defendant permission to call their cell phones with automated dialing systems.  As a consequence of said acts, the Defendant has violated the TCPA and is liable for damages pursuant to federal law.

24

## COUNT FIFTEEN:

## VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT

## (SPECIALIZED LOAN SERVICES)

119.   The Plaintiff makes a claim under ECOA, which makes it illegal "for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(1). One way that ECOA effectuates this goal is through its notice requirement, which states: "Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." Id. § 1691(d)(2). ECOA defines an "adverse action" as a: denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested.

120.   When a creditor takes an adverse action against an applicant without giving the required notice, the applicant may sue for a violation of ECOA.  § 1691e ("Any creditor who fails to comply with any requirement imposed under this subchapter shall be liable to the aggrieved applicant for any actual damages sustained by such applicant"); see also Thompson v. Galles Chevrolet Co., 807 F.2d 163, 166 (10th Cir. 1986) (quoting Sayers v. Gen. Motors Acceptance Corp., 522 F. Supp. 835, 840 (W.D. Mo. 1981)).

121.   Plaintiffs contend that the Defendant's acceleration of his debt constituted a "revocation of credit" for purposes of the definition of "adverse action." ECOA defines "credit" to mean "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C. § 1691a(d).

25

122.   On June 12, 2015, Plaintiffs received a notice from the Jauregui Law Firm informing them that, "due to the default under the terms of the mortgage or deed of trust, the entire balance is due and payable." Plaintiffs made diligent   efforts to determine whether SLS's default notices were mere clerical errors or represented SLS's termination of the loan modification agreement. Based on SLS's prolonged non-responsiveness, and its affirmative statements regarding loan acceleration and default, SLS terminated the loan modification agreement and thereby revoked the Plaintiffs' credit for purposes of § 1691(d)(6).

123.   When SLS informed the Plaintiffs that it had accelerated his loan and was commencing foreclosure proceedings, its statements communicated the bank's refusal to abide by the terms of the loan modification agreement entered into on August 29, 2013, which had given Plaintiffs a longer period to repay the loan. On its face, this communication revoked the prior credit arrangement. Because the Defendants failed to send an adverse action notice, the Defendants took an adverse action without complying with ECOA's notice requirements and have violated the terms of the EOCA and owe damages for said violations to the Plaintiffs.

## COUNT SIXTEEN:
## CLAIM FOR DECLARATORY RELIEF
### (ALL DEFENDANTS)

124.   The Jacksons re-allege and adopts the above paragraphs as if fully set forth herein and also asserts the following:

125.   Defendants breached the contract with the Jacksons by failing to follow the terms for notice requirements agreed to in the mortgage contract as well as payment application.  Defendants never sent the Jacksons the required notices and failed to properly apply their payments.  As a result the Jacksons are entitled to the following declaratory relief:  (1) An Order declaring that they are not in default of their mortgage agreement and declaring the notice of default is null and void.

26

(2) An order declaring that Defendants have no right or authority to foreclose on the Jacksons' property.  (3) An Order prohibiting Defendants from foreclosing on the Jacksons' property.

**PLAINTIFFS (THE JACKSONS) DEMAND A TRIAL BY JURY.**

**WHEREFORE,** the Plaintiffs having set forth their claims for relief against the Defendants respectfully pray of the Court as follows:

a.   That the Plaintiffs have and recover against the Defendants, a sum to be determined by this Court and their peers in the form of actual damages.

b.   That the Plaintiffs have and recover against the Defendants a sum to be determined by this Court in the form of compensatory and punitive damages.

c.   That Plaintiffs, the Jacksons, be awarded attorney fees and court cost.

d.   That the Plaintiffs have such other and further and proper relief as the Court may deem just and proper:

RESPECTFULLY SUBMITTED:

/s/ Kenneth James Lay
HOOD & LAY, LLC
1117 22nd Street South
Birmingham, Alabama 35205
Tel: (205) 323-4123
Fax:(205) 776-2040
Attorney for Plaintiffs

27