[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 19-13215

_____

ANTHONY LENNEN,
individually and on behalf of all others similarly situated,
BETH LENNEN,
individually and on behalf of all others similarly situated,

Plaintiffs-Appellants,

*versus*

MARRIOTT OWNERSHIP RESORTS, INC.,
MARRIOTT RESORTS, TRAVEL COMPANY, INC.,
d.b.a. MVC Exchange Company,
MARRIOTT RESORTS TITLE COMPANY, INC.,
MVC TRUST OWNERS ASSOCIATION, INC.,
FIRST AMERICAN FINANCIAL CORPORATION,
ORANGE COUNTY FLORIDA,
MARRIOTT RESORTS HOSPITALITY CORPORATION, et al.,

Defendants-Appellees.

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:16-cv-00855-CEM-EJK

————————————

Before LUCK and BRASHER, Circuit Judges.[*]

PER CURIAM:

This dispute arises out of Anthony and Beth Lennen's purchase of timeshares from Marriott[1] between 2008 and 2015 that they claim violated the Florida Condominium Act, the Florida Land Trust Act, the Florida Vacation Plan and Timesharing Act (Florida Timeshare Act), the Florida Civil Remedies for Criminal Practices Act (Florida RICO Act), and the state statute governing recording property records. After the district court dismissed their initial complaint as a shotgun pleading, the Lennens filed an amended complaint against Marriott, MVC Trust Owners

———————————

[*] This opinion is being entered by a quorum pursuant to 28 U.S.C. section 46(d).

[1] We refer to Marriott Ownership Resorts, Inc., Marriott Resorts Travel Company, Inc., Marriott Resorts Title Company, Inc., and Marriott Resorts Hospitality Corporation together as "Marriott."

Association, First American,[2] and Orange County.  The district court dismissed the amended complaint because some counts were shotgun pleadings and others failed to state a claim, and granted summary judgment and judgment on the pleadings on the remaining two claims.  After careful consideration and with the benefit of oral argument, we affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In January 2008, the Lennens purchased two timeshare estates in Marriott's Crystal Shores condominium located in Marco Island, Florida.[3]  These were "single-site" timeshare estates, meaning that they conveyed a fractional ownership interest in a single condominium unit coupled with a license to use the accommodations at the Crystal Shores resort.  The Lennens also purchased a title insurance policy issued by First American, which insured against any title defect in the two timeshare estates.

### The MVC Trust

In 2010, in the aftermath of the foreclosure crisis, Marriott had a glut of timeshare estates at its properties that were either unsold or had been foreclosed on and reverted to Marriott.  With this

---

[2] We refer to First American Financial Corporation, First American Trust, FSB, and First American Title Insurance Company together as "First American."

[3] We take the facts alleged in the complaint as true, construing them in the light most favorable to the Lennens, the non-movant. *Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1207 (11th Cir. 2018).

excess inventory, Marriott created the MVC Trust. The trust was "a points-based product in a multisite timeshare plan" that included forty-four Marriott-owned timeshare condominiums located in eleven states. In contrast to single-site timeshare estates, multisite timeshare estates convey a right to use multiple timeshare condominiums. To create the trust, Marriott deeded its excess timeshares to First American as trustee. Marriott, as the beneficiary, retained the beneficial interests in the trust.

The rules for the trust were in four documents: (1) a trust agreement (governing the formation of the trust and assignment of interests); (2) bylaws for the trust owners' association; (3) a reservation system (governing the process for reserving timeshares); and (4) the trust rules and regulations (governing the terms of use of trust properties). A summary of the terms for the trust was included in a "Trust Memorandum" that was recorded in the Orange County land records.

The trust functioned this way. Marriott assigned a point value to each timeshare it deeded to First American. Marriott called the number of points required to reserve a particular timeshare "Points for Use." Marriott then deeded purchasers beneficial interests in the trust in blocks of 250 "points." Marriott called these beneficial interests "Points for Sale" and sold them to purchasers as "timeshare estates." Trust owners could spend their points to book any available timeshare in the trust.

Marriott periodically added new properties to the trust by deeding them to First American and recording "notices of addition"

in the Orange County land records.  The notices of addition described the newly added properties and indicated the point value that Marriott had assigned to them.  Marriott didn't make newly added properties immediately available to existing trust owners.  Instead, the newly added properties remained unavailable to trust owners until Marriott, "in its sole and absolute discretion," delivered another notice—a "notice of use rights"—to the trust owners' association and First American.

The delivery of a notice of use rights for additional timeshares triggered adjustments to the number of points in the trust.  After Marriott delivered a notice of use rights, it "recalibrated" each trust owner's proportional beneficial interest in the trust to account for the additional Points for Use.  According to the Lennens, because the addition of new properties caused the total number of points in the trust to increase, each addition caused the trust owners' proportional interests to decrease.

In addition, the trust agreement provided that "[t]he total Points for Sale in the [t]rust at any given time will never exceed the total Points for Use at such time" and that "[t]he total Points for Sale allocated to the [t]rust [p]roperty [would] not change unless . . . a [n]otice [o]f [u]se with respect to [newly added] property [was] delivered."  Thus, the additional Points for Use from newly added properties resulted in a corresponding increase of available Points for Sale once Marriott delivered a notice of use rights for the newly added properties.  The new Points for Sale were then sold to new

or existing customers, creating new trust owners, or increasing the number of points held by existing owners.

### The Lennens' Interests in the MVC Trust

In January 2015, the Lennens purchased four beneficial interests in the MVC Trust. The Lennens' deed was recorded in the Orange County land records and described these interests as:

> 4 Interests (numbered for administrative purposes: H04815 & H04816 & H04817 & H04818) in the MVC Trust ("Trust") evidenced for administrative, assessment and ownership purposes by 1,000 Points (250 Points for each Interest), which Trust was created pursuant to and further described in that certain MVC Trust Agreement dated March 11, 2010, executed by and among First American Trust, FSB, a federal savings bank, solely as trustee of Land Trust No. 1082-0300-00, (a.k.a MVC Trust), Marriott Ownership Resorts, Inc., a Delaware corporation, and MVC Trust Owners Association, Inc., a Florida corporation not-for-profit, as such agreement may be amended and supplemented from time to time ("Trust Agreement"), a memorandum of which is recorded in Official Records Book 10015, Page 4176, Public Records of Orange County, Florida ("Trust Memorandum"). The Interests shall have a Use Year Commencement Date of January 01, 2016 (subject to Section 3.5 of the Trust Agreement).

The Lennens also purchased a title insurance policy from First American, which insured against any title defect in their beneficial interests.

### The Lennens' Lawsuit

According to the Lennens, the MVC Trust diminished the value of their single-site timeshare estates, and their beneficial interests in the trust were an "unmarketable use-right . . . subject to Marriott's opaque and discretionary point-valuation process." They sued Marriott, the trust owners' association, First American, Orange County, and the Orange County Comptroller for negligence, violating the Florida Condominium Act, the Florida Land Trust Act, the Florida Timeshare Act, and the Florida RICO Act.

The defendants moved to dismiss. Orange County and the Comptroller moved to dismiss the Lennens' claim against them for failure to provide the statutorily required pre-suit notice for a claim against state subdivisions and for failure to state a claim. Marriott, the trust owners' association, and First American moved to dismiss the Lennens' claims for failure to state a claim and because the complaint was a shotgun pleading.

The district court dismissed the Lennens' claim against Orange County and the Comptroller for failure to comply with Florida's pre-suit notice requirements and dismissed their claims against Marriott, the trust owners' association, and First American because the complaint was a shotgun pleading. In its order, the district court explained that shotgun pleadings violated Federal Rules of Civil Procedure 8 and 10. The district court also explained

that "[t]he Eleventh Circuit has identified four types of shotgun pleadings" and described each type.  The district court concluded that the Lennens' complaint was a shotgun pleading because: (1) each count, with one exception, reincorporated all of the preceding counts and factual allegations; (2) the allegations inconsistently grouped the different defendants; and (3) the complaint was "replete with repetitive and confusing allegations, many of which appear[ed] to be irrelevant to [the] actual causes of action."  The district court granted the Lennens leave to amend and instructed that their amended complaint "must clearly set forth each cause of action they intend to pursue against each named Defendant, the legal basis for that cause of action, and the factual allegations supporting their entitlement to recovery," "carefully identify each Defendant and clearly lay out which allegations pertain to which defendants," and that "each count should incorporate only those facts that are relevant to proving [the Lennens'] entitlement to relief for the specific allegation of that count and should not incorporate any portion of a previous count."

### The Amended Complaint

The Lennens filed an amended complaint naming Marriott, the trust owners' association, First American, and Orange County—but not the Comptroller—as defendants.  The Lennens asserted fifteen claims:

Declaratory relief claims (counts I–III)

The Lennens' first three claims sought declaratory relief based on their allegations that the trust and their deed were void.

- First declaratory relief claim (count I).  In count I, the Lennens sought a declaration that their deed was void because: (1) their beneficial interests weren't real property under Florida law; and (2) the deed's description of the beneficial interests wasn't a valid legal description of a parcel of real property.

- Second declaratory relief claim (count II).  In count II, the Lennens sought a declaration that their deed was void because:  (1) Marriott couldn't convey legal title to trust property when it had already conveyed legal and equitable title to First American as trustee; and (2) the trust was void under the doctrine of merger.

- Third declaratory relief claim (count III).  And in count III, the Lennens sought a declaration that:  (1) they were entitled to full coverage payment on their First American title insurance policy covering their beneficial interests because First American had violated section 627.784 by insuring the Lennens' beneficial interests even though the interests were defective; or (2) their title insurance policy was "void ab initio" because the trust was void.

### Negligence claim (count IV)

The amended complaint also included a negligence claim against Orange County.

- Negligence claim (count IV).  In count IV, the Lennens alleged that the county had improperly:  (1) recorded and indexed their deed, the trust memorandum, notices of addition, and mortgages on trust purchases; and (2) assessed documentary stamp taxes when it recorded the Lennens' deed. According to the Lennens, the county breached its duty under section 28.222 to only record "authorized" documents for real property located in Orange County because the trust documents were neither authorized nor related to properties located in Orange County.

### Florida Condominium Act, Florida Land Trust Act, and Florida Timeshare Act claims (counts V–XIII)

In the next nine counts of the amended complaint, the Lennens raised statutory claims based on Marriott's, the trust owners' association's, and First American's alleged violations of the Florida Condominium Act, the Florida Land Trust Act, and the Florida Timeshare Act.

- Section 718.104 claim (count V).  In count V, the Lennens claimed that Marriott, the trust owners' association, and First American violated section 718.104 of the Florida Condominium Act because:  (1) the trust lacked a recorded condominium declaration; and (2) none of the trust properties'

condominium declarations "mention[ed] or recognize[d]" the trust.

- Section 721.57 claim (count VI).  In count VI, the Lennens claimed that Marriott, the trust owners' association, and First American violated section 721.57 of the Florida Timeshare Act because: (1) their beneficial interests weren't real property; (2) their beneficial interests weren't timeshare estates; and (3) the trust didn't satisfy the requirements of section 721.08 of the Florida Timeshare Act for the reasons "alleged in counts VII and VIII."

- Section 721.03(7)/section 721.08/section 736.1011 claim (count VII).  In count VII, the Lennens claimed that Marriott, the trust owners' association, and First American violated sections 721.03(7) and 721.08 of the Florida Timeshare Act because First American was not independent from Marriott, and it failed to verify:  (1) that the Lennens' deed conveyed valid title to a timeshare estate; and (2) that the trust's condominiums were "subject to a recorded nondisturbance and notice to creditor instrument."  Count VII also alleged that Marriott violated section 736.1011(1) of the Florida Trust Code because it "agreed . . . to fully indemnify First American for its acts as trustee."

- Section 721.08(2)(c)4. claim (count VIII).  In count VIII, the Lennens claimed that Marriott, the trust owners' association, and First American violated section 721.08(2)(c)4. of

the Florida Timeshare Act because Marriott didn't provide First American evidence that the "facilities and accommodations" it transferred to the trust were "free and clear from the claims of interestholders." Count VIII also alleged that, because the trust didn't meet the requirements of section 721.08(2)(c)4., "Marriott unlawfully withdrew proceeds from the sales of the MVC Trust from escrow." And count VIII alleged that "First American violated [section] 721.08."

- <u>Section 721.03(10) claim (count IX).</u> In count IX, the Lennens claimed that Marriott and the trust owners' association violated section 721.03(10) of the Florida Timeshare Act by not maintaining a "one-to-one nightly-use ratio" because: (1) the trust documents didn't contain "any type of methodology to maintain" the one-to-one ratio; and (2) it was "mathematically impossible to achieve anything resembling a one-to-one nightly-use ratio." According to the Lennens, there was "an unavoidable discrepancy between the point value ascribed to properties in the MVC Trust that are available to MVC Trust Owners and the total points allotted to all properties in the MVC Trust."

- <u>Section 721.552 claim (count X).</u> In count X, the Lennens claimed that Marriott, the trust owners' association, and First American violated section 721.552(1)(b) of the Florida Timeshare Act because Marriott "unfairly and unreasonably increase[d] competition among MVC Trust Owners" by

restricting the trust owners' access to certain "high-demand" timeshares.

- Section 721.13/Florida Condominium Act claim (count XI). In count XI, the Lennens claimed that Marriott and the trust owners' association violated section 721.13 of the Florida Timeshare Act because: (1) the trust owners' association was "necessarily incapable" of fulfilling its fiduciary duties to trust owners as "merely a proxy for Marriott"; (2) the trust owners' association was "not created prior to the first closing" of sales of the traditional timeshare estates that were included in the trust properties; (3) the trust properties were outside of the trust owners' association's authority; and (4) the trust owners' association collected "arbitrary" fees. Count XI also alleged that the trust owners' association violated the Florida Condominium Act because it purported to manage the trust properties that already had owners' associations.

- Section 721.15 claim (count XII). In count XII, the Lennens claimed that Marriott and the trust owners' association violated section 721.15 of the Florida Timeshare Act by "unfairly" allocating common expenses for restricted-use properties differently than they did for other trust property.

- Section 721.56 claim (count XIII). And in count XIII, the Lennens claimed that Marriott and the trust owners' association violated section 721.56 of the Florida Timeshare Act

because the trust's reservation procedures didn't provide separate reservation systems for trust owners and owners of traditional single-site timeshare estates.

### Florida RICO Act claims

Finally, the amended complaint included two claims against Marriott and First American for violating the Florida RICO Act.

- First Florida RICO Act claim.  In the first Florida RICO Act claim, the Lennens alleged that Marriott and First American conspired to violate section 721.08 of the Florida Timeshare Act by allowing Marriott to withdraw proceeds from trust sales from escrow.

- Second Florida RICO Act claim.  And in the second Florida RICO Act claim, the Lennens alleged that Marriott and First American conspired to violate section 721.08 of the Florida Timeshare Act by transferring timeshare estates to a trust that didn't comply with sections 721.08(2)(c)4. and 721.57 of the Florida Timeshare Act.

The defendants again moved to dismiss.  Marriott, the trust owners' association, and First American again argued that the amended complaint was a shotgun pleading and that the MVC Trust and trust documents complied with Florida law.  Orange County argued that the Lennens had failed to allege that it acted negligently.

*The District Court Dismissed Three Claims As Shotgun Pleadings*

The district court dismissed the section 721.03(7)/section 721.08/section 736.1011 claim (count VII), the section 721.08(2)(c)4. claim (count VIII), and the section 721.13/Florida Condominium Act claim (count XI) as shotgun pleadings. The district court dismissed these claims as shotgun pleadings because they failed to separate into different counts each cause of action or claim for relief. And it dismissed the section 721.03(7)/section 721.08/section 736.1011 claim (count VII) and the section 721.08(2)(c)4. claim (count VIII) because they had more than one claim against more than one defendant without alleging which of the defendants were responsible for which acts or omissions. Because it was the second dismissal for failing to comply with rules 8 and 10, the district court didn't grant the Lennens leave to amend.

*The District Court Dismissed Ten Claims For Failure to State a Claim*

The district court dismissed for failure to state a claim the second and third declaratory relief claims (counts II and III), the section 718.104 claim (count V), the section 721.57 claim (count VI), the section 721.03(10) claim (count IX), the section 721.552 claim (count X), the section 721.15 claim (count XII), the section 721.56 claim (count XIII), and the first and second Florida RICO Act claims. For the declaratory relief claims, the district court concluded that the second declaratory relief claim (count II) didn't state a claim because the interests that Marriott deeded to the Lennens—beneficial interests in the trust—were separate and distinct

from the legal and equitable title that Marriott conveyed to First American as trustee.  And the district court concluded that the third declaratory relief claim (count III) failed to state a claim because: (1) the Lennens didn't allege that they had made a claim under the title insurance policy; and (2) section 627.784 didn't provide a private right of action.[4]

For the Florida Condominium Act, Florida Land Trust Act, and the Florida Timeshare Act claims, the district court dismissed the section 718.104 claim (count V) because the trust was not subject to the Florida Condominium Act.  The district court dismissed the section 721.57 claim (count VI) because:  (1) it was based on the section 721.03(7)/section 721.08/section 736.1011 claim (count VII) and the section 721.08(2)(c)4. claim (count VIII) that were dismissed as shotgun pleadings; and (2) the Florida Timeshare Act "explicitly contemplate[d] the offering of timeshare estates in a multisite timeshare plan."

The district court dismissed the section 721.03(10) claim (count IX) because the terms of the trust agreement provided a method to govern point values and maintained the required one-to-one ratio.  The district court dismissed the section 721.552 claim (count X) because the Lennens:  (1) didn't allege how Marriott's addition of property to the trust increased competition; and

---

[4] Section 627.784 provides that "[a] title insurance policy or guarantee of title may not be issued without regard to the possible existence of adverse matters or defects of title."  Fla. Stat. § 627.784.

(2) cited no authority to support their contention that Marriott's method of adding property to the trust violated its fiduciary duty.

The district court dismissed the section 721.15 claim (count XII) because: (1) section 721.15 permitted a different allocation of common expenses for properties not yet included in a timeshare plan; and (2) the Lennens' allegation that Marriott's method of allocating expenses was unreasonable was "based on pure speculation." And the district court dismissed the section 721.56 claim (count XIII) because the Lennens hadn't sufficiently alleged how Marriott's reservation system violated the statute's requirements.

Finally, for the Florida RICO Act claims, the district court concluded that both claims failed because the Lennens didn't identify under which subsection of the Florida RICO Act they brought their claims. And the claims that served as the necessary predicate acts—the section 721.57 claim (count VI), the section 721.03(7)/section 721.08/section 736.1011 claim (count VII), the section 721.08(2)(c)4. claim (count VIII)—failed to state a claim.

After the district court's dismissal order, the only claims remaining were: (1) the first declaratory relief claim (count I) against Marriott; and (2) the negligence claim (count IV) against Orange County.

### The District Court Granted Judgment on the Pleadings for Marriott on the First Declaratory Relief Claim (Count I)

Marriott then moved for judgment on the pleadings on the first declaratory relief claim (count I), arguing that the Lennens'

deed was not void because their beneficial interests in the trust were real property under the Florida Land Trust Act and that the deed sufficiently described the beneficial interests. The district court granted the motion, and entered judgment on the pleadings for Marriot, because the Lennens' deed was valid. The deed, the district court concluded, sufficiently described the beneficial interests after considering the property descriptions contained in parol evidence—the notices of addition and the trust memorandum.

### *The District Court Granted Summary Judgment for Orange County on the Negligence Claim (Count IV)*

Orange County moved for summary judgment on the negligence claim (count IV), arguing that it was not negligent as a matter of law because it had no discretion to reject the trust documents for recording or to decline to assess documentary stamp taxes after it recorded them. The district court granted the motion because: (1) it was premised on a violation of section 28.222, which didn't provide a private right of action; and (2) even if the Lennens could've asserted a negligence claim, section 28.222 didn't give the county discretion to refuse to record legal documents.

The Lennens appeal the district court's orders:

- (1) dismissing as shotgun pleadings the section 721.03(7)/section 721.08/section 736.1011 claim (count VII), the section 721.08(2)(c)4. claim (count VIII), and the section 721.13/Florida Condominium Act claim (count XI);

- (2) dismissing for failure to state a claim the second and third declaratory relief claims (counts II and III), the section 718.104 claim (count V), the section 721.57 claim (count VI), the section 721.03(10) claim (count IX), the section 721.15 claim (count XII), and the first and second Florida RICO Act claims;

- (3) granting judgment on the pleadings on the first declaratory relief claim (count I); and

- (4) granting summary judgment on the negligence claim (count IV).[5]

## STANDARDS OF REVIEW

We review dismissal on shotgun pleading grounds for an abuse of discretion. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294 (11th Cir. 2018). And we review the district court's dismissal for failure to state a claim, judgment on the pleadings, and summary judgment de novo. *Sun Life*, 904 F.3d at 1207. "The

---

[5] The Lennens don't appeal the district court's dismissal of the section 721.552 claim (count X) and the section 721.56 claim (count XIII). And in their brief on appeal, the Lennens make a passing reference to the district court's dismissal of their punitive damages allegations on shotgun pleading grounds but fail to argue on the merits as to this issue. The issue is therefore deemed abandoned. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *Farrow v. West*, 320 F.3d 1235, 1242 n.10 (11th Cir. 2003).

standards for reviewing decisions on motions to dismiss and motions for judgment on the pleadings are the same: whether the count stated a claim for relief." *Id.* (quotation marks omitted).

To state a claim, a "complaint must include allegations plausibly suggesting (not merely consistent with) the plaintiff's entitlement to relief." *Id.* (quotation marks omitted). We "accept all facts in the complaint as true and view those facts in the light most favorable to the plaintiff." *Id.* "However, conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Taylor v. Polhill*, 964 F.3d 975, 981 (11th Cir. 2020) (citation omitted).

For summary judgment, "the movant must demonstrate that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law." *Sun Life*, 904 F.3d at 1207 (alterations adopted and quotation marks omitted). In reviewing the record, we "view the submitted evidence in the light most favorable to the non-moving party." *Id.* (quotation marks omitted).

## DISCUSSION

The Lennens argue that the district court erred in granting judgment on the pleadings for Marriott on the first declaratory relief claim (count I), dismissing the remaining claims against Marriott, the trust owners' association, and First American as shotgun pleadings and for failure to state a claim, and granting summary judgment for Orange County on the negligence claim (count IV). The defendants urge us to affirm across the board. And we do.

We first explain why the district court did not err in granting judgment on the pleadings for Marriott. We then explain why the district court properly dismissed the remaining claims against Marriott, the trust owners' association, and First American. We conclude by explaining why the district court correctly granted summary judgment for Orange County.

### The District Court's Judgment on the Pleadings on the First Declaratory Relief Claim (Count I)

The Lennens appeal the district court's judgment on the pleadings for Marriott on their first declaratory relief claim (count I). The Lennens argue that the district court erred in concluding that their beneficial interests in the trust were real property and in considering parol evidence to determine that the deed's description of the beneficial interests was sufficient. But their beneficial interests in the MVC Trust were real property under Florida law, and parol evidence was admissible to determine the description of the beneficial interests. The district court did not err in granting judgment on the pleadings for Marriott.

### The Lennens' beneficial interests in the MVC Trust were real property.

Under Florida law, "[t]o effect a valid conveyance of real property, a deed or other instrument must describe the property such that it is evident that a particular parcel . . . is to be conveyed." *Mendelson v. Great W. Bank, F.S.B.*, 712 So. 2d 1194, 1196 (Fla. Dist. Ct. App. 1998). The Lennens argue that their beneficial

interests in the MVC Trust were "intangible property right[s]"—not real property—so their deed didn't effect a valid conveyance. We, like the district court, disagree and conclude that the Lennens' beneficial interests were real property interests under both the Florida Land Trust Act and the Florida Timeshare Act.

The Florida Land Trust Act defines a "[b]eneficial interest" as "any interest . . . in a land trust which is held by a beneficiary," Fla. Stat. § 689.071(2)(a), and defines a "[b]eneficiary" as "any person or entity having a beneficial interest in a land trust," *id.* § 689.071(2)(b).[6] A "[l]and trust" is an "express written agreement or arrangement by which a . . . trust is declared of any land . . . under which the title to real property . . . is vested in a trustee by a recorded instrument." *Id.* § 689.071(2)(c). And, importantly here, unless "the trust agreement . . . contains a provision defining and

_____

[6] The Lennens contend that we should apply the 2010 versions of the Florida Land Trust Act and Florida Timeshare Act because that is when Marriott created the trust. But because the Lennens' causes of action accrued when they purchased their beneficial interests on January 14, 2015, *see* Fla. Stat. § 95.031(1) ("A cause of action accrues when the last element constituting the cause of action occurs."), we apply the statutes as they were in effect when the claimed accrued. *See R.J. Reynolds Tobacco Co. v. Sheffield*, 266 So. 3d 1230, 1232 (Fla. Dist. Ct. App. 2019) (explaining that Florida courts apply the version of a statute "in effect when the instant . . . cause of action accrued"). For that reason, unless we indicate otherwise, the Florida Statutes cited or quoted in this opinion are to those that were in effect on January 14, 2015. *See, e.g.*, *Universal Prop. & Cas. Ins. Co. v. Loftus*, 276 So. 3d 849, 852 n.2 (Fla. Dist. Ct. App. 2019) (applying the version of the Florida Condominium Act that was in effect when the alleged property damage occurred).

declaring the interests of beneficiaries of a land trust to be personal property only, . . . *the interests of the land trust beneficiaries are real property.*"  *Id.* § 689.071(6) (emphasis added).

The trust agreement described the interests that were conveyed to purchasers as "beneficial interest[s] in the [t]rust" and described the owners of these interests as "[b]eneficiaries."  Marriott deeded legal title to the timeshare estates to First American as trustee, and it transferred any new properties to the trust by recording "notices of addition" in the Orange County land records.  The trust agreement stated that it "established a trust in accordance with [s]ection 689.071" and that beneficiaries were "entitle[d] . . . to reserve, use, and occupy the [t]rust [p]roperty."  Thus, both expressly and in compliance with the statutory requirements, Marriott created a land trust when it created the MVC Trust.  *See* Fla. Stat. § 689.071(2)(c).  And because the MVC Trust was a land trust that didn't "defin[e] and declar[e] the interests of beneficiaries . . . to be personal property," the Lennens' beneficial interests "[were] real property."  *See id.* § 689.071(6).

This conclusion is consistent with the Florida Timeshare Act.  The trust agreement provided that beneficial interests in the trust "shall constitute a 'timeshare estate' as that term is defined by [s]ection 721.05."  Section 721.05 of the Florida Timeshare Act defines "[t]imeshare estate" to include "a direct or indirect interest in a trust that complies in all respects with the provisions of [section] 721.08(2)(c)4. . . . provided that the trust does not contain any personal property timeshare interests."  Fla. Stat. § 721.05(34).  And

under the Florida Timeshare Act, "[a] timeshare estate is a parcel of real property." *Id.*

The Lennens' beneficial interests in the MVC Trust met section 721.05's definition of a "timeshare estate." First, Marriott granted the Lennens direct interests in the trust. Second, the trust didn't contain any personal property timeshare interests.[7] The trust agreement contemplated only the submission of real property to the trust, and the Lennens don't allege that Marriott transferred anything other than real property to the trust.

And third, the Lennens haven't shown that the trust failed to comply with section 721.08(2)(c)4. That statute imposes requirements on trusts holding timeshare interests, including: (1) that "[t]he trustee must be independent from any developer or managing entity of the timeshare plan"; and (2) that prior to the transfer of "accommodations and facilities" to the trust, "any lien or other encumbrance against such accommodations and facilities" must "be made subject to a nondisturbance and notice to creditors instrument." *Id.* § 721.08(2)(c)4.b. In their amended complaint, the Lennens alleged that the trust didn't comply with section 721.08(2)(c)4. because: (1) First American wasn't independent from Marriott; and (2) First American failed to "verify that [the]

---

[7] A "[p]ersonal property timeshare interest" is "a right to occupy an accommodation located on or in or comprised of personal property that is not permanently affixed to real property, whether or not coupled with a beneficial or ownership interest in the accommodations or personal property." Fla. Stat. § 721.05(28).

timeshare estate[s] w[ere] free and clear of the claims of any interestholders." But the allegations are insufficient.

The Lennens' allegation that First American wasn't independent from Marriott is insufficient because the Lennens didn't explain how First American's role—other than selling title insurance policies—is inconsistent with acting as a fiduciary and why any fees earned wouldn't have been "fiduciary fees" permitted under the Florida Timeshare Act. *See id.* § 721.05(20)(b), (d)4. The Florida Timeshare Act permitted First American to issue title insurance policies in connection with the sale of interests in a timeshare estate. *See id.* § 721.05(20)(d)(4). Marriott's indemnity of First American didn't compromise First American's independence. The trust agreement limited the indemnity "[t]o the extent permitted by applicable law," and included exceptions for First American's gross negligence or willful misconduct. *See* Fla. Stat. § 736.1011(1) ("A term of a trust relieving a trustee of liability for breach of trust is unenforceable to the extent that the term: (a) Relieves the trustee of liability for breach of trust committed in bad faith or with reckless indifference to the purposes of the trust or the interests of the beneficiaries. . . .").

The Lennens' allegation that First American failed to "verify that [the] timeshare estate[s] w[ere] free and clear of the claims of any interestholders" also is insufficient because it is contradicted by the trust agreement. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007) ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits

govern."). The trust agreement provided that, "[p]rior to the transfer of additional property to the [t]rust . . . any lien or other encumbrance against such property shall be made subject to a nondisturbance and notice to creditors instrument, a subordination and notice to creditors instrument, or an alternate assurance in accordance with [s]ection 721.53." And the Lennens have failed to identify any defects or encumbrances. Without factual allegations to support their claim, we cannot conclude that the trust didn't comply with section 721.08(2)(c)4.

Finally, the Lennens argue that section 721.05(34) requires that "a timeshare estate *must be* a parcel of real property" and that their beneficial interests aren't a parcel of real property. But the statute says "[a] timeshare estate *is* a parcel of real property." *Id.* (emphasis added). Because section 721.05(34) is "plain and unambiguous, there is no need for further inquiry." *United States v. Stevens*, 997 F.3d 1307, 1314 (11th Cir. 2021). And because we conclude that the Lennens' beneficial interests in the trust were "timeshare estates" as defined by the Florida Timeshare Act, those interests were real property and were properly conveyed by deed. *See Mendelson*, 712 So. 2d at 1196.

## The deed sufficiently described a particular parcel of real property.

To effect a valid conveyance of real property, a deed "must describe the property such that it is evident that a particular parcel, and not a different or unspecified one, is to be conveyed." *Id.* at 1196. Marriott contends that the district court properly considered

the notices of addition and the trust memorandum to conclude that the deed sufficiently described the beneficial interests. The Lennens disagree, insisting that the description was "facially invalid" and couldn't be cured through parol evidence. We conclude that the district court didn't err because the deed, considered together with the notices of addition and trust memorandum, sufficiently described the Lennens' beneficial interests.

Florida courts "liberally construe the sufficiency of a legal description in a deed." *Refaie v. Bayview Loan Servicing, LLC*, ___ So. 3d ___, 2021 WL 1931892, at *4 (Fla. Dist. Ct. App. May 14, 2021). "[A] description is sufficient if, by relying on the description *read in light off all facts and circumstances referred to in the instrument*, a surveyor could locate the land." *Mendelson*, 712 So. 2d at 1196. "[P]arol evidence is admissible to determine the description so long as the instrument itself shows that the parties *were contemplating a particular piece of property . . . .*" *Bajrangi v. Magnethel Enters., Inc.*, 589 So. 2d 416, 418 (Fla. Dist. Ct. App. 1991).

The Lennens' deed specified that it conveyed interests in the trust pursuant to the trust agreement and trust memorandum, which both referenced the notices of addition. Because we may "rely[] on the description read in light of all facts and circumstances referred to in the instrument," *Mendelson*, 712 So. 2d at 1196 (emphasis omitted), we may consult these documents to identify the trust property, *see Bajrangi*, 589 So. 2d at 418 ("Where the description shows that a particular tract as distinguished from other lands

is meant, then parol evidence can be resorted to to apply the description, or identify or locate the land, though the description be somewhat general." (citation omitted)).  The notices of addition included a legal description of each property that Marriott added to the trust.  Reading these documents together, it is evident that the Lennens' deed conveyed a "particular piece of property"— timeshare estates in the real property held by the trust.  *See Bajrangi*, 589 So. 2d at 418; *Mendelson*, 712 So. 2d at 1196.  Accordingly, the Lennens' deed sufficiently described their beneficial interests.

### *The District Court's Dismissal of Three Claims as Shotgun Pleadings*

The district court dismissed the section 721.03(7)/section 721.08/section 736.1011 claim (count VII), the section 721.08(2)(c)4. claim (count VIII), and the section 721.13/Florida Condominium Act claim (count XI) as shotgun pleadings because the Lennens:  (1) failed to separate each cause of action or claim for relief into different counts; and (2) grouped claims against multiple defendants into single counts without specifying which of the defendants were responsible for which acts or omissions.  The district court didn't grant leave to amend.  The Lennens argue that the district court erred because these claims were properly pleaded, and, even if they weren't, the district court should have given them a second opportunity to amend. We disagree.

"Shotgun pleadings wreak havoc on the judicial system" and "divert already stretched judicial resources into disputes that are

not structurally prepared to use those resources efficiently." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) (alteration adopted and quotation marks omitted). We have identified four types of shotgun pleadings. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). The first is "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* The second is "a complaint that . . . is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. The third is a complaint "that commits the sin of not separating into a different count each cause of action or claim for relief." *Id.* at 1322–23. And the fourth and final type is a complaint that commits the "sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323.

Section 721.03(7)/section 721.08/section 736.1011 claim
(count VII)

In count VII, the Lennens claimed that Marriott, the trust owners' association, and First American violated sections 721.03(7) and 721.08 of the Florida Timeshare Act, and claimed that Marriott and the trust owners' association violated section 736.1011(1) of the Florida Trust Code. Count VII was a shotgun pleading because it impermissibly alleged multiple claims and multiple statutory

violations against multiple defendants. Because count VII fell into the third category of shotgun pleadings, the district court's dismissal was not an abuse of discretion. *See id.* at 1322–23.

### Section 721.08(2)(c)4. claim (count VIII)

In count VIII, the Lennens claimed that Marriott, the trust owners' association, and First American violated section 721.08(2)(c)4. of the Florida Timeshare Act and that First American violated section 721.08 because: (1) Marriott didn't provide First American evidence that the "facilities and accommodations" it transferred to the trust were "free and clear from the claims of interestholders"; and (2) "Marriott unlawfully withdrew proceeds from the sales of the MVC Trust from escrow." Count VIII asserted multiple claims against multiple defendants without specifying which of the defendants were responsible for which acts or omissions. This fell into the fourth category of shotgun pleadings and the district court didn't abuse its discretion by dismissing it. *See id.*

### Section 721.13/Florida Condominium Act claim (count XI)

In count XI, the Lennens claimed that Marriott and the trust owners' association violated section 721.13 of the Florida Timeshare Act, and that the trust owners' association violated the Florida Condominium Act. The Lennens argue that count XI was not a shotgun pleading because they alleged only a single violation under section 721.13 and their "discussion of [section] 718 [of the Florida Condominium Act]" was not a separate claim because that

statute was "specifically incorporated into [section] 721.13." We disagree.

The Lennens alleged that the trust owners' association violated the Florida Condominium Act and section 721.13 of the Florida Timeshare Act, and each have their own elements of proof. Combining them into count XI was impermissible. *See, e.g.*, *Cesnik v. Edgewood Baptist Church*, 88 F.3d 902, 905 (11th Cir. 1996) ("[S]eparate, discrete causes of action should be plead in separate counts."). For this reason, count XI fell into the third category of shotgun pleadings, and the district court didn't abuse its discretion by dismissing it. *See Weiland*, 792 F.3d at 1322–23.

### Leave to amend

The Lennens argue that even if the section 721.03(7)/section 721.08/section 736.1011 claim (count VII), the section 721.08(2)(c)4. claim (count VIII), and the section 721.13/Florida Condominium Act claim (count XI) were shotgun pleadings, the district court abused its discretion by not granting them another opportunity to amend. "In dismissing a shotgun complaint for noncompliance with [r]ule 8(a), a district court must give the plaintiff 'one chance to remedy such deficiencies.'" *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1358 (11th Cir. 2018) (quoting *Vibe Micro, Inc.*, 878 F.3d at 1295) "After that one . . . opportunity to replead comes and goes," the district court may "dismiss with prejudice if the party has still [not] filed a compliant pleading." *Vibe Micro, Inc.*, 878 F.3d at 1296 (citing *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541 (11th Cir. 2002)). "What matters is

function, not form: the key is whether the plaintiff had fair notice of the defects and a meaningful chance to fix them." *Jackson*, 898 F.3d at 1358. "If that chance is afforded and the plaintiff fails to remedy the defects, the district court does not abuse its discretion in dismissing the case with prejudice on shotgun pleading grounds." *Id.*

Here, the district court gave the Lennens one opportunity to amend after it dismissed their initial complaint. The question is whether they were entitled to a second. The Lennens argue that they were because the district court's second dismissal was based on "entirely *different* grounds" than its dismissal of the initial complaint on shotgun pleading grounds. We aren't persuaded.

In its order dismissing the initial complaint, the district court explained that the initial complaint was a shotgun pleading because: each count reincorporated all the preceding allegations; it inconsistently grouped the defendants; and it contained "repetitive and confusing allegations, many of which appear[ed] to be irrelevant to [the] actual causes of action." In its order dismissing the amended complaint, the district court explained that the section 721.03(7)/section 721.08/section 736.1011 claim (count VII), the section 721.08(2)(c)4. claim (count VIII), and the section 721.13/Florida Condominium Act claim (count XI) "fail[ed] to separate into different counts each cause of action or claim for relief" and that it was unclear from the allegations in counts VII and VIII "what conduct form[ed] the basis" of the Lennens' claims against each defendant.

Although the pleading defects the district court identified in the initial complaint differed somewhat from the pleading defects it identified in the amended complaint, the district court's order dismissing the initial complaint explained each of the four types of shotgun pleadings described in *Weiland*, including "the sin of not separating into a different count each cause of action or claim for relief." The district court also directed the Lennens to "clearly set forth each cause of action . . . against each named Defendant, the legal basis for that cause of action, [] the factual allegations supporting their entitlement to recovery, [and to] . . . identify each Defendant and clearly lay out which allegations pertain to which defendants." The district court's order dismissing the initial complaint gave the Lennens "fair notice" of the pleading defects that would make their amended complaint a shotgun pleading. *See Jackson*, 898 F.3d at 1358.

Despite having notice of the four types of shotgun pleadings, instructions on how to avoid dismissal, and an opportunity to replead, the Lennens "squandered that opportunity by filing another shotgun pleading." *See Barmapov v. Amuial*, 986 F.3d 1321, 1326 (11th Cir. 2021). Thus, it wasn't an abuse of discretion for the district court to dismiss the section 721.03(7)/section 721.08/section 736.1011 claim (count VII), the section 721.08(2)(c)4. claim (count VIII), and the section 721.13/Florida Condominium Act claim (count XI) without leave to amend. *See Jackson*, 898 F.3d at 1358.

*The District Court's Dismissal of Ten Claims for Failure to State a Claim*

The district court dismissed for failure to state a claim the second and third declaratory relief claims (counts II and III), the section 718.104 claim (count V), the section 721.57 claim (count VI), the section 721.03(10) claim (count IX), the section 721.15 claim (count XII), and the first and second Florida RICO Act claims. We affirm the dismissal as to each.

The second and third declaratory relief claims (counts II and III)

The Lennens argue that the district court erred in dismissing the second declaratory relief claim (count II) because it:  (1) resolved a disputed question of fact when it determined that the Lennens' interests in the trust were beneficial interests in a land trust; (2) concluded that the Lennens' beneficial interests were interests in real property under the Florida Land Trust Act and "timeshare estates" under the Florida Timeshare Act even though the beneficial interests were not "a physical piece of partitioned land"; and (3) concluded that the Lennens' beneficial interests were properly conveyed by deed even though Marriott had conveyed legal title to the trust property to First American.  But the district court didn't err.

As we've already explained, the Lennens' interests in the trust were:  (1) beneficial interests in a land trust and real property under the Florida Land Trust Act, *see* Fla. Stat. §§ 689.071(2)(a)–(c), (6); and (2) "timeshare estates" under the Florida Timeshare Act,

*see id.* § 721.05(34). And as we've also already explained, the beneficial interests were properly conveyed by deed. *See Mendelson*, 712 So. 2d at 1196.

That First American held legal and equitable title to the trust property does not change the analysis. The Florida Land Trust Act makes clear that "[t]he trustee's legal and equitable title to the trust property of a land trust is separate and distinct from the beneficial interest of a beneficiary in the land trust and in the trust property." Fla. Stat. § 689.071(8)(d). Marriott transferred legal and equitable title to the trust property to First American, as trustee for the MVC Trust, but retained the beneficial interests—the very interests that it then conveyed to purchasers. So, when Marriott conveyed its beneficial interests in the trust to purchasers via deed (which it was authorized to do under the trust agreement), legal title to the trust property remained with First American.

As to the third declaratory relief claim (count III), the Lennens argue that the district court failed to address their alternate basis for relief—that the policy was "void ab initio" because First American couldn't insure interests in a void trust. But as we've already explained, Marriott created a valid land trust when it created the MVC Trust. *See id.* § 689.071(2)(c). And the Lennens' beneficial interests were real property and were validly conveyed to the Lennens via deed.

Section 718.104 claim (count V)

The Florida Condominium Act governs the "creation, sale, and operation of condominiums." Fla. Stat. § 718.102(2). A condominium "is created by recording a declaration in the public records of the county where the land is located." *Id.* § 718.104(2). No timeshare estates may be created with respect to any condominium unit unless the recorded declaration of condominium permits their creation. *See id.* §§ 718.104(4)(o), 718.1045. To permit the creation of timeshare estates, the declaration must "declar[e] that timeshare estates will or may be created with respect to units in the condominium" and "defin[e] and describe[e] in detail" the "degree, quantity, nature, and extent of the timeshare estates that will be created." *Id.* § 718.104(4)(o).

The Lennens argue that the district court erred in dismissing the section 718.104 claim (count V) because: (1) the "MVC Trust product is sold as a timeshare estate created in a condominium"; (2) the Florida Condominium Act does not "allow[] for an exception from timeshare estates created in condominiums subject to pre-existing condominium declarations"; and (3) the district court "disregarded" letters from the Florida Department of Business and Professional Regulation that "expressly provid[e]  that that the MVC Trust is subject to the [Florida Condominium] Act." We disagree.

The Lennens alleged that their beneficial interests in the MVC Trust were "illusory" because they weren't created in compliance with the Florida Condominium Act. But the trust didn't

create condominiums and therefore neither Marriott, the trust owners' association, nor First American were required to record declarations of condominiums. *See id.* § 718.104. Nor was there any requirement for the declarations for the condominiums held by the trust to identify the trust. *See id.* § 718.04(4)(o). The district court correctly concluded that the Florida Condominium Act didn't apply to the trust.

The district court also properly declined to consider the letters in ruling on the motion to dismiss because the Lennens didn't attach them to the amended complaint, and they weren't "central" to the Lennens' claims. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). And even if the letters could've properly been considered by the district court in ruling on the motions to dismiss, they wouldn't support the Lennens' claim. The letters stated only that the Department of Business and Professional Regulation "verifie[d] [Marriot Ownership Resort's] substantial compliance with the filing and disclosure requirements of chapters 718 and 721, Florida Statutes, (*as applicable*)" (emphasis added). Contrary to the Lennens' characterization, the letters didn't affirmatively indicate that the Florida Condominium Act applied to the trust.

### Section 721.57 claim (count VI)

Section 721.57 of the Florida Timeshare Act requires "[t]he timeshare instrument of a multisite timeshare plan in which timeshare estates are offered, *other than a trust meeting the requirements of [section] 721.08*," to include certain terms and states that "[a]ny offering of timeshare estates in a multisite timeshare

plan that does not comply with these requirements shall be deemed to be an offering of a timeshare license." Fla. Stat. § 721.57(1)–(2) (emphasis added). The Lennens argue that the district court's dismissal of their section 721.57 claim (count VI) was "based on a clear misapprehension of the claim and controlling law as to whether the MVC Trust is a valid multisite timeshare estate."

But the amended complaint alleged that the trust violated section 721.57 because: (1) the Lennens' beneficial interests weren't real property; (2) the beneficial interests weren't timeshare estates; and (3) the trust didn't comply with section 721.08. We've already concluded that the beneficial interests were both real property and timeshare estates. *See id.* §§ 689.071(2)(a)–(c), (6), 721.05(34). And as we've already explained, the Lennens didn't plausibly allege a violation of section 721.08 because they failed to explain how First American wasn't independent from Marriott. And they didn't sufficiently allege that First American didn't verify that the timeshare estates were free and clear of the claims of any interestholders.

### Section 721.03(10) claim (count IX)

Under section 721.03(10) of the Florida Timeshare Act, "[a] developer or seller may not offer any number of timeshare interests that would cause the total number of timeshare interests offered to exceed a one-to-one use right to use night requirement ratio." Fla. Stat. § 721.03(10). This means that "the sum of the nights that owners are entitled to use in a given 12-month period shall not exceed

the number of nights available for use by those owners during the same 12-month period." *Id.* § 721.05(25).

The Lennens argue that the district court erred in dismissing their section 721.03(10) claim (count IX) because:  (1) whether the trust complied with the one-to-one ratio requirement "cannot be assessed" because "Marriott's approach to point values is entirely discretionary and undisclosed"; (2) "it [was] impossible to assess what properties [were] *actually* available for reservations by MVC Trust Owners" because the notices of addition "included restricted-use properties"; and (3) the trust's Points for Sale and Points for Use didn't take into account the points that the trust owners could "bank" and "borrow" from one year to the next.  But, as the district court correctly noted, the Lennens' allegations were undercut by the terms of the trust agreement, which provided a method to govern point values and maintained the one-to-one ratio.

The trust agreement limited the number of "Points for Sale"—i.e., the points available for purchase—to the number of "Points for Use"—i.e., the points available to trust owners exercising their use rights.  And the district court could assess what trust properties were available for reservations because the trust agreement provided that "[t]he total Points for Sale allocated to the [t]rust [p]roperty [would] not change unless . . . a [n]otice [o]f [u]se with respect to [newly added] property [was] delivered."

Although the Lennens alleged that the trust couldn't possibly have maintained the one-to-one ratio, they didn't allege a single instance where the trust actually failed to do so.  This is fatal to

their claim.  Other courts, considering similar schemes and similar statutory requirements, have held that plaintiffs must identify at least one instance of a violation to make their claim more than mere speculation.  See, e.g., Flynn v. Marriott Ownership Resorts, Inc., 165 F. Supp. 3d 955, 976–77 (D. Haw. 2016) (dismissing a claim based on a violation of Hawaii's one-to-one ratio requirement where the plaintiffs "d[id] not allege any instance when they were unable to reserve any room of the type they purchased during any week during their designated period"); Abramson v. Marriott Ownership Resorts, Inc., 155 F. Supp. 3d 1056, 1065 (C.D. Cal. 2016) (dismissing a claim based on a violation of California's one-to-one ratio requirement for the same reason).  We agree.

And while the Lennens now argue that the trust owners' ability to "bank" and "borrow" points from one year to the next made it impossible for the trust to comply with the one-to-one ratio, they failed to allege this in their complaint.  See Bickley v. Caremark RX, Inc., 461 F.3d 1325, 1329 n.7 (11th Cir. 2006) ("A court is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss."); S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy.").

## Section 721.15 claim (count XII)

The Lennens alleged that Marriott and the trust owners' association violated section 721.15 by "unfairly" allocating common expenses for restricted-use properties differently than they did for

other trust property. The district court dismissed this claim because section 721.15 permits a different allocation of expenses for properties not yet included in a timeshare plan:

> The timeshare instrument may provide that the common expenses allocated may differ between those timeshare units that are part of the timeshare plan and those units that are not part of the timeshare plan; however, the different proportion of expenses must be based upon reasonable differences in the benefit provided to each.

Fla. Stat. § 721.15(1)(a).

The Lennens argue that the district court erred because restricted-use properties were still part of the "trust property." But a "timeshare plan" is defined as an "agreement . . . whereby a purchaser, for consideration, receives ownership rights in or *a right to use* accommodations, and facilities." *Id.* § 721.05(39) (emphasis added). And under the trust agreement, trust owners didn't have a right to use the restricted properties until Marriott delivered a notice of use rights. Thus, restricted-use properties weren't part of the "timeshare plan," and Marriott and the trust owners' association were permitted to allocate the share of expenses for those properties differently.

### The first and second Florida RICO Act claims

The Lennens concede that their first and second Florida RICO Act claims rise or fall with the section 721.57 claim (count VI), the section 721.03(7)/section 721.08/section 736.1011 claim

(count VII), and the section 721.08(2)(c)4. claim (count VIII). Because the section 721.57 claim (count VI) was properly dismissed for failure to state a claim, and the section 721.03(7)/section 721.08/section 736.1011 claim (count VII) and the section 721.08(2)(c)4. claim (count VIII) were properly dismissed as shotgun pleadings, the district court didn't err in dismissing the derivative Florida RICO Act claims as well. *See Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Grp., Inc.*, 79 So. 3d 855, 864 (Fla. Dist. Ct. App. 2012) ("[T]o bring a RICO action in Florida . . . . [A] plaintiff must plead the necessary predicate acts or continuity of endeavor.").

### *The District Court's Summary Judgment on the Negligence Claim (Count IV)*

Finally, the Lennens argue that the district court erred by granting summary judgment for Orange County on the negligence claim (count IV) because it:  (1) misconstrued their negligence claim as a statutory claim under section 28.222; (2) misinterpreted section 28.222 "as mandating the recording of *any* instrument"; and (3) resolved disputed issues of fact concerning the trust documents' "legitimacy" and the county's conduct in recording and indexing them.  We affirm the district court's grant of summary judgment because the county was not negligent as a matter of law.

The Lennens' claim fails because, even if the trust documents were legally deficient, the county had no discretion to reject them for recording.  Section 28.222 states that, "[u]pon payment of the service charges prescribed by law," the clerk "*shall* record . . .

19-13215                Opinion of the Court                43

[d]eeds . . . agreements . . . and other instruments relating to the ownership, transfer or encumbrance of or claims against real or personal property or any interest in it."  Fla. Stat. § 28.222(3)(a) (emphasis added).[8]  "Shall" means "must," not "may" or "can." *See Phillips v. Pritchett Trucking, Inc.*, ___ So. 3d ____, 2021 WL 4582131, at *1 (Fla. Dist. Ct. App. Oct. 6, 2021) ("Although there is no fixed construction of the word 'shall,' it is normally meant to be mandatory in nature." (quoting *S.R. v. State*, 346 So. 2d 1018, 1019 (Fla. 1977))).  For this reason, Florida courts have explained that "[a] clerk acts in a purely ministerial capacity, and has no discretion to pass upon the sufficiency of the documents presented for filing." *Ferlita v. State*, 380 So. 2d 1118, 1119 (Fla. Dist. Ct. App. 1980); *see, e.g.*, *City of Miami v. Piper*, 306 So. 3d 156, 158 (Fla. Dist. Ct. App. 2020) ("The use of the word 'shall' only reinforces that the clerk's responsibility is ministerial."); *Coral Gables Imports, Inc. v. Suarez*, 306 So. 3d 348, 351 (Fla. Dist. Ct. App. 2020) ("It is well-established that the clerk of courts is a ministerial officer of the court and, as such, is not endowed with any discretion.").  Therefore, if the trust documents were properly executed and formatted, *see* Fla. Stat. § 695.26, the county was *required* to record them, *see id.* § 28.222(3).  Because the Lennens don't dispute that the trust

---

[8] The Lennens argue that section 28.222 didn't authorize the county to record documents relating to real property located outside of Orange County or to record facially defective documents.  But they haven't identified any author-ity—statutory or otherwise—for this proposition.

documents were properly executed and formatted, the county was required to record them.

Even so, the Lennens contend that the county lacked statutory authority to record the notices of addition and their deed because these documents lacked "a legal description of a parcel of real property." But because the Lennens' beneficial interests in the trust and the trust property were real property, *see id.* § 689.071(6), the notices of addition and their deed were "instruments relating to the ownership, transfer, or encumbrance of . . . real . . . property or any interest in it," *see id.* § 28.222(3)(a). Therefore, even if the deed and notices of addition lacked valid legal descriptions (which, as we've concluded, they didn't) the county "ha[d] no discretion to pass upon the sufficiency of the documents presented for filing." *Ferlita*, 380 So. 2d at 1119.

For similar reasons, the Lennens' claim also fails to the extent it is based on the county's allegedly improper assessment of documentary stamp taxes. Like the recording statute, the statue governing the county's assessment of documentary stamp taxes was mandatory: "documentary stamp taxes *shall* be paid on all recordable instruments requiring documentary stamp tax according to law, prior to recordation." Fla. Stat. § 201.01 (emphasis added). Because the Lennens' deed and the trust documents were recordable, the county was required to assess documentary stamp taxes prior to recordation. Accordingly, the district court correctly granted summary judgment on this claim.

**AFFIRMED.**